## *NASHVILLE v. SUTHERLAND & CO.

### (*Nashville.* March 4, 1893.)

MUNICIPAL CORPORATIONS. *Ultra vires contract.*

A contract on the part of a city, made by accepting a deed of a right of way for a sewer pipe, to the effect that the city will have the sewer so constructed with a suitable valve as to prevent water from flowing back into the grantor's premises, is, in the absence of express charter power to make such a contract, valid only so far as the city would have been bound by law in the absence of any contract—that is, for negligence in the execution of the work—but so far as it assumes to insure or guarantee the grantor against other damage, it is void.

Cases cited and approved: Humes v. Knoxville, 1 Hum., 403; Nashville v. Brown, 9 Heis., 6; Horton v. Nashville, 4 Lea, 49; 4 Am. & Eng. Corp. Cas., 339, 341; 18 Am. St. Rep., 377; 2 Am. & Eng. Corp. Cas., 640; 12 Wall., 349.

---

FROM DAVIDSON.

---

Appeal in error from Circuit Court of Davidson County. W. K. McALISTER, J.

J. M. ANDERSON for Nashville.

WHITMAN & GAMBLE for Sutherland.

SNODGRASS, J. The defendant in error, by joint conveyance of its members, Wm. Sutherland and

*There is a note to the above case reported in 19 L. R. A., 619, on the limitation of the doctrine of *ultra vires* in respect to municipal corporations.—REPORTER.

Chas. A. Graves, in deed executed June 15, 1888, conveyed to plaintiff in error a right of way through their lumber-yard for a sewer-pipe, to drain into the river a pond lying near the property of Sutherland & Co., for the consideration of $150, and the further consideration expressed in a clause of the deed made by Sutherland and Graves, to be hereinafter quoted, which deed was accepted by the city, the cash consideration paid, and the pipe laid and a valve constructed.

The terms of the contract were expressed in the deed referred to; and while this was signed only by the vendors, it, as stated, was accepted by the city, and is therefore as obligatory as if signed by its authorized officers, to the extent that it is at all binding.

The clause of the contract out of which the present controversy arises is as follows:

"It is further agreed, and the city of Nashville binds itself, to have said sewer so constructed with a suitable valve as will prevent, in case of high rise in the river, the flowing of water from the river back through the said pipe or sewer into the lot or premises of said Sutherland and Graves to their injury or damage."

And its effect, if valid, is to make the city an insurer of the property of the conveyors against injury or damage by reason of overflow through this valve and pipe.

The city laid the pipe and constructed the valve in the fall of 1888. In 1890 an unusually high

rise in the river caused an overflow through the valve and pipe, and submerged the property of Sutherland & Co., doing them much damage. The present action was instituted by them to recover damages arising from breach of this contract. The amount claimed was $3,000. There was a verdict for $2,845, $845 of which was remitted, and judgment rendered for $2,000 and costs. The city appealed in error.

The Court charged the jury " that if the Board of Public Works and Affairs accepted for the city this contract, and in pursuance of it entered upon the plaintiff's premises, and occupied the same by the construction of said sewer or drain, then the city will be bound by all the covenants and stipulations of the contract."

He refused to charge, as requested by plaintiff in error, that " the city is only liable for such negligence as is imposed by law, and the officers of the city cannot bind it to a higher degree of care and skill and diligence than the law imposes. Before the city can be bound by guarantee of its officers, they must have the power, under the charter of the city, to bind the city by such guarantee."

In both respects, his Honor, the Circuit Judge, was in error. It was within the power of the officers of the city to agree to put in any given kind of sewer and valve (had they done so) as part consideration for the grant of right of way; but they could not, in the absence of charter

22—8 P

power, bind the city by a guarantee that they or it would put in such pipe or valve as would prevent overflow to the injury or damage of defendants, and thus make the city insurers of property against such injury.

The city is only liable for absence of reasonable care and skill in the execution of such work, and its officers cannot lawfully contract to bind it beyond this without express charter power not claimed or shown in this record to exist.

The first proposition is well settled everywhere, and specially in this State. *Humes* v. *Knoxville,* 1 Hum., 403; *Nashville* v. *Brown,* 9 Heis., 6; *Horton* v. *Nashville,* 4 Lea, 49. And the second follows as a matter of course. But this, while not heretofore, as far as we are able to find, expressly adjudged in this State, has been elsewhere settled, and the principle is a sound one.

The theory on which it is founded is thus stated by Mr. Dillon:

"In determining *the extent of the power* of a municipal corporation to make contracts, and in ascertaining *the mode* in which the power is to be exercised, the importance of a careful study of the charter or incorporating Act and of the general legislation of the State on the subject, if there be any, cannot be too strongly urged. Where there are express provisions on the subject, these will, of course, measure, as far as they extend, the authority of the corporation. The power to make contracts, and to sue and to be sued thereon,

is usually conferred in general terms in the incorporating Act. But where the power is conferred in this manner, it is not to be construed as authorizing the making of contracts of all descriptions, but only such as are necessary and usual, fit and proper, to enable the corporation to secure or to carry into effect the purposes for which it was created; and the extent of the power will depend upon the other provisions of the charter prescribing the matters in respect of which the corporation is authorized to act. To the extent necessary to execute the special powers and functions with which it is endowed by its charter, there is, indeed, an *implied or incidental authority* to contract obligations, and to sue and be sued in the corporate name." Dillon on Municipal Corp., Sec. 443.

As to the effect of *ultra vires* contracts, the same author adds:

" The general principle of law is settled beyond controversy that the agents, officers, or even city council of a municipal corporation *cannot bind the corporation* by any contract which is *beyond the scope of its powers,* or entirely *foreign* to the purposes of the corporation, or which (not being legislatively authorized) is against public policy. This doctrine grows out of the nature of such institutions, and rests upon reasonable and solid grounds. The inhabitants are the corporators; the officers are but officers or public agents of the corporation. The duties and powers of the officers or

public agents of the corporation are prescribed by statute or charter, which all persons not only may know, but are bound to know. The opposite doctrine would be fraught with such danger and accompanied with such abuse that it would soon end in the ruin of municipalities or be legislatively overthrown. These considerations vindicate both the reasonableness and necessity of the rule that the corporation is bound only when its agents or officers—by whom it can alone act, if it acts at all—keep within the limits of the chartered authority of the corporation. The history of the workings of municipal bodies has demonstrated the salutary nature of this principle, and that it is the part of true wisdom to keep the corporate wings clipped down to the lawful standard. It results from this doctrine that contracts not authorized by the charter or by other legislative acts—that is, not within the scope of the powers of the corporation under any circumstances—are void; and, in actions thereon, the corporations may successfully interpose the plea of *ultra vires*, setting up as a defense its own want of power, under its charter or constituent statute, to enter into the contract." Dillon on Municipal Corp., Sec. 457.

In Sec. 458 of same work he says:

"Agreeably to the foregoing principles, a corporation cannot maintain an *action on a bond or a contract which is invalid;* as, where a city, without authority, loaned its bonds to a private company, and took from it a penal bond, conditioned for

the faithful application of the city bonds to payment for works which the city had no power to construct or assist in constructing. The remedy in such case must be in some other form than in an action to enforce the contract. So, a contract by a city to waive its rights to go on with the laying out of a street or not, as it might choose, is, it seems, against *public policy;* and it is void if it amounts to a surrender of its legislative discretion." Dillon on Municipal Corporations, Sec. 458.

See, also, case of *Vanhorn* v. *Des Moines*, 4 Am. and Eng. C. C., 339. This is an Iowa case. It was a suit brought by the owner of a certain building, that had been destroyed by fire, against the city of Des Moines, predicated upon the neglect of Des Moines Water-works Company to supply sufficient water to extinguish the fire. It appeared in this case that the water-works company was a private corporation, with which the city of Des Moines had contracted to furnish its fire department a certain quantity of water, and said water company further indemnified the city against all damages that might result to it by reason of the water company's negligence in the construction and operation of its works.

The Court, after discussing the general liabilities of a municipal corporation for its failure to extinguish fires, and determining that there was no such liability, proceeded to consider the case with reference to the contract between the city

and the water-works, and on this branch of the case said:

"But it is said that the case at bar is peculiar, in this, that the city took a contract from the water-works company to protect itself against all actions that might be brought against it for misfeasance or neglect on the part of the company. This indemnity, it is claimed, gives a right of action where -otherwise it would not exist; but clearly this is not so. Indemnification against liability must always be regarded as having reference to existing grounds of liability, and not as serving to create new ones. Besides, the city could not assume liability for negligence in cases where the law did not already impose a liability. The contract, then, must be construed as covering cases only where an action might be maintained against the city independent of the contract." 4 Am. & Eng. C. C., 341.

In *Becker* v. *Keokuk Water-works*, 18 Am. St. Rep., 377, the Vanhorn case is cited and approved; and in that case it was held that a city could not assume a liability for negligence where none was imposed by law, and that the contract of indemnity must be regarded as having reference to existing grounds of liability, and not as creating new ones. 18 Am. St. Rep., 379.

Another case, involving same principle, is *Black* v. *City of Columbia*, 19 S. C. Rep.; 2 Am. & Eng. C. C., 640. This was a suit to recover damages plaintiff had sustained in loss of his house

by fire. It was claimed by plaintiff, among other things, that the fire was the result of the defendant's negligence in failing to furnish a sufficient supply of water, as it had *contracted* and *agreed* to do. The Court said:

"If, however, we consider that there was, as alleged, a distinct, express contract of the officers with the plaintiff, personally undertaking to insure him an adequate supply of water in the pipes at all times for the purposes aforesaid, it does not necessarily follow that the action could be maintained upon such contract. That would involve another question—whether the officers of the corporation have the right to make such a contract. Doubtless there are cases in which a contract by a municipal corporation will be implied from facts. These, however, arise, for the most part, out of transactions in which the corporation itself has in some way received and used property or money which, *ex æquo et bono*, does not belong to it. But in all cases, either of express or implied contract on the part of the corporation, the contract cannot be enforced against the corporation if it is in violation of the charter or beyond the scope of the agency created by it. In such case, the principle of *respondeat superior* does not apply, but the alleged contract is *ultra vires* and void. To this class belongs an alleged contract which restricts the exercise of legislative discretion vested in the municipality or its officers in reference to public duties, and, upon such contract, the corpo-

ration cannot be held either in special or general *assumpsit*. *Thomas* v. *City of Richmond*, 12 Wall., 349; Dill. Mun. Corp., Secs. 61, 372, and notes. In the case from Wallace, notes were issued by the city of Richmond to circulate as money, in contravention of law, and it was held that they could not be recovered. The Court said: 'Municipal corporations represent the public, and are themselves to be protected against the unauthorized acts of their officers when it can be done without injury to third parties. Persons dealing with such officers are chargeable with notice of the powers which the corporation possesses, and are to be held responsible accordingly. The issuing of bills by such a corporation, without authority, is not only contrary to positive law, but, being *ultra vires*, is an abuse of the public franchise which has been conferred upon it, and the receiver of the bills, being chargeable with notice, is in *pari delicto* with the officers, and should have no remedy against the corporation. * * * The protection of public corporations from such unauthorized acts of their officers, is a matter of public policy in which the whole community is concerned,' etc. If, as alleged, there was, in this case, a contract by the officers of the city, insuring to the plaintiff an adequate supply of water at all times and under all circumstances, we are inclined to the opinion that it was a contract restricting the discretion of the municipality beyond the scope of the charter, and, if actually proved, would not support an action against

the corporation." 2 Am. & Eng. C. C., pages 647 and 648.

We add to this case, concluding the citation of authorities on the point in issue, the admirable comment in argument of counsel for the city, which concisely and accurately expresses the view of the Court:

"As, in this case, it was held as the law itself imposed no liability on the defendant city for its failure to supply plaintiff with water, no contract that its officers might make could charge it with such liability; so, in the case at bar, it should be held that, as the law binds the defendant only to a careful and skillful exercise of the construction of its sewers, and does not impose on them the obligation and liability of an insurer, no contract that its officers might make could impose such liability.

"That a municipal corporation cannot and should not be bound by an *ultra vires* contract is a proposition that is well settled by authority and sustained by reason and justice. To hold otherwise would be to vastly enlarge the authority of public agents, and permit them to bind a municipal corporation by contracts absolutely prohibited by law, and would thus expose the public to evils and abuses that the limitations and restrictions thrown around corporate officers are intended to prevent. On the other hand, there is no hardship in such a doctrine, for these officers are public officers, whose

rights and powers are fixed by law, and he who is ignorant of them is ignorant without excuse."

The Board of Public Works and Affairs could bind the city by contract so far and no further than it would have been bound by law, that is to ordinary skill and care in the execution of the work agreed to be done. So, as is well said in the same argument of counsel:

"If they had undertaken to indemnify Sutherland & Co. against loss resulting from defendant's negligence in the execution of the work, this would have been valid, for this much the city is bound by law, independent of any contract provision; but, instead of limiting the city's obligation as fixed by law, the Board, by contract, attempted to make it liable for what, in the absence of such a contract, it is not pretended it could have been held liable.

"The inhabitants of the city of Nashville—those people who live within the corporate limits—are its corporators. Their liability as well as their rights are fixed by law, and no more can the agents of these corporators increase their liabilities than they can deprive them of their rights.

"The Legislature of the State has deemed it a wise policy to charge municipal corporations with a certain liability. All who deal with these corporations are bound to know the extent of this liability; and when the corporation's agents exceed it, they may be guilty of a personal wrong, but

Nashville *v.* Sutherland & Co.

cannot subject the corporation they represent to damages on that account."

For the errors indicated, the judgment must be reversed, and the case remanded for a new trial. Defendants in error will pay costs of this Court.