# Turnpike Co. *v.* Montgomery County.

## ·  (*Nashville.*  December 18, 1897.)

1. **Turnpike Company.**  *Acquires no rights against county erecting competing bridge.*

    A turnpike company whose charter does not confer an exclusive franchise, acquires no right of action against a county for the destruction or diminution of its business and revenues by reason of the erection, for the public convenience, under order of the County Court, of a free competing bridge or road. (*Post, pp. 420–427.*)

    Cases cited and approved: Turnpike Co. *v.* Davidson Co., 91 Tenn., 291; 11 Pet., 420; 7 Pickering, 344.

    Cited and distinguished: Bridge Co. *v.* Clarksville, 1 Sneed, 176; 27 Am. Dec., 655.

2. **Same.**  *Use of turnpike between toll gates.*

    For the use by the public of a turnpike between toll gates, the company has no right to toll or other compensation.  (*Post, pp. 427, 428.*)

    Case cited: 11 Pet., 545.

3. **Corporations.**  *Charters strictly construed.*

    Where any right or privilege, and especially an exclusive one, is claimed under the charter of a corporation, nothing is to be taken as conceded to it but what is given in unmistakable terms, or by an implication equally clear.  "In grants by the public nothing passes by implication."  (*Post, pp. 421, 422.*)

---

### FROM  MONTGOMERY.

---

Appeal in error from Circuit Court of Montgomery County.  A. H. Munford, J.

Turnpike Co. *v.* Montgomery County.

John F. House and Leech & Savage for Turnpike Co.

R. H. Burney and Gholson & Lyle for Montgomery County.

McAlister, J. Plaintiff is the proprietor of a toll bridge over Red River, near the corporate limits of Clarksville, and sues the county to recover damages for loss of tolls, which it alleges has been occasioned by the act of defendant in erecting a free bridge over said river in such close proximity to plaintiff's bridge as to divert therefrom more than three-fourths of its legitimate and accustomed patronage. A demurrer was interposed on behalf of the county, which was sustained by the Circuit Judge, and the suit dismissed. Plaintiff appealed, and has assigned errors.

It appears from the record that in July, 1893, the plaintiff, turnpike company, filed a bill against Montgomery County, to enjoin it against the construction of the bridge in controversy across Red River, and from opening a public road running thence northward, on the ground that the same was intended for a shun pike, and that if thrown open to public travel, it would practically destroy the value of complainant's franchise. The Court of Chancery Appeals held that the proposed road was not a shun pike, but that it was a public convenience, and that the County Court had a right to open it and build said free bridge. That decree was, on appeal, affirmed by this Court.

The declaration in the present action alleges that said Clarksville & Russellville Turnpike Company was incorporated in 1830, and that its corporate existence will, by its charter, expire in 1899; that under its charter plaintiff has, for many years, maintained a turnpike, running from Clarksville, Tenn., in the direction of Russellville, Ky., about twelve miles; that it owns a toll bridge on its line across Red River, about one mile from Clarksville, and that it maintains gates at which tolls have been collected; that said defendant county has erected a free bridge over Red River a short distance below plaintiff's said toll bridge, and said free bridge is a part of a public highway established by the County Court between the city of Clarksville and Pea Ridge for the public convenience; that the location of said road diverts the travel from several roads which were tributary to plaintiff's road, and that defendant county actually uses that portion of plaintiff's pike north of its intersection with the Peterson road in coming to and from Clarksville by way of the said road. It is then alleged that the construction of the free bridge, and the location of the new route, has taken from plaintiff's pike more than three-fourths of its legitimate travel coming to it north of the said intersection with the Peterson road by the northern end of the pike itself, and by the highway herein named, and to some extent its travel south of said intersection, and has practically destroyed the value of

plaintiff's pike and bridge. Wherefore plaintiff sues for damages.

The demurrer interposed by defendant assigns the following grounds, to wit: "The county of Montgomery had the right to construct the highway complained of in the plaintiff's declaration, because it was required by the public convenience; and the fact that such highway had the effect to diminish the travel on plaintiff's turnpike, and, consequently, to diminish its revenue, will not entitle it to maintain this action. When the State granted a charter to the plaintiff company, it was not intended thereby to deprive the public authorities of the right to lay out such highways as the public travel required, and this highway is no infringement upon plaintiff's charter rights."

It is not alleged in the declaration that the rights and privileges conferred upon the plaintiff turnpike company by its charter of incorporation were exclusive, and no such insistence is made by counsel in argument. It is conceded, as was decided in the former litigation between these parties, that the County Court, in the exercise of its powers and duties in respect of laying out and maintaining roads and highways for the convenience of the general public, had the right to construct this free bridge, and open up the new route. But the insistence of learned counsel is that the effect of such public improvements by the county was to destroy the franchise of the turnpike company, and is equivalent to

a "taking" of its property for public purposes, which cannot be done without compensation.

Counsel rely upon Sec. 21, Art. 1, Declaration of Rights, Const. 1870, viz.: "That no man's particular services shall be demanded or property taken, or applied to public use, without the consent of his representatives, or without just compensation being made therefor." The argument is that, if this new highway answers a public convenience, but in its effect necessarily involves the destruction of plaintiff's property, it is a manifest "taking" or "ap-. plication" of its property to a public use without compensation. It is insisted there need be no actual physical application or taking possession of property to constitute a "taking" or "application" in the sense of the Constitution. The positions assumed by counsel have been reinforced by an able and elaborate argument, but we find ourselves unable to agree to its soundness.

Says Mr. Beach, in his work on Private Corporations, Vol. I., Sec. 25, viz.: "Accordingly, where a right or privilege is claimed under the charter of a corporation, nothing is to be taken as conceded to it but what is given in unmistakable terms, or by an implication equally clear."

Section 26, viz.: "Especially, in cases where the corporation claims under its charter some exclusive privilege or exemption, have the Courts held that the contract, to be effective, must be clearly expressed in the charter. So that whenever an incorporated

company, in any action, asserts a right against another person, based upon an assumed franchise or power, the person against whom the right is so asserted may, as a defense, deny the existence of such franchise or power. The policy of the law is to regard with disfavor any claim to exclusive privileges and franchises. Thus, an Act in the usual form, incorporating a bridge company, not explicitly granting any exclusive privileges, and containing no agreement by the State not to permit other bridges in competition, cannot be construed by implication to prevent the State from subsequently granting a charter to another company for a competing bridge. And where there is no contract in the charter of a turnpike company that prohibits the legislature from authorizing the construction of a rival railroad, the construction and operation of the railroad are not the subject of legal redress."

Says Mr. Cooley, in his work on Constitutional Limitations, page 473, viz.: " The granting of a charter to a new corporation may sometimes render valueless the franchise of an existing corporation, but unless the State, by contract, has precluded itself from such new grant, the incidental injury can constitute no obstacle." Citing *Charles River Bridge* v. *Warren Bridge*, 7 Pickering, 344, and 11 Peters, 420. " In that case the State of Massachusetts granted to a corporation the right to construct a toll bridge across the Charles River, under a charter which was to continue for forty years—afterwards extended to

seventy—at the end of which period the bridge was to become the property of the Commonwealth. During the term the corporation was to pay £200 annually to Harvard College. Forty-two years after the bridge was opened for passengers, the State incorporated a company for the purpose of erecting another bridge over the same river, a short distance only from the first, and which would accommodate the same passengers. The necessary effect would be to decrease greatly the value of the first franchise, if not to render it altogether worthless. But the first charter was not exclusive in its terms; no contract was violated in granting the second; the resulting injury was incidental to the exercise of an undoubted right by the State, and, as all the vested rights of the first corporation still remained, though reduced in value by the new grant, the case was one of damage without legal injury."

The established doctrine on this subject, enforced by this Court, is that settled by the Supreme Court of the United States, to wit: "Where the grant is not, by its terms, exclusive, the Legislature is not precluded from granting a similar franchise or authorizing the construction of a rival way or structure, which may greatly impair or even totally destroy the value of the former grant, and such damage is not a taking of the former franchise which entitles its owner to compensation." This principle was settled in the leading case of *Charles River Bridge* v. *Warren Bridge*, 11 Peters, 420, and has

been confirmed by numerous decisions. Lewis on Eminent Domain, sec. 136. The same principles were announced by this Court in *Turnpike Co. (Hyde's Ferry Turnpike Co.)* v. *Davidson County*, reported in 7 Pickle, 291. In that case, the Hyde's Ferry Turnpike Company filed a bill against Davidson County, in which it was alleged that the County had constructed a free bridge across the Cumberland River, about two-thirds of a mile above a toll ferry operated by complainant, under the powers conferred by its charter. It was charged that the result of opening this free bridge was to divert travel from complainant's turnpike; that it had lost almost its entire revenues which it was entitled to collect on tolls; that its chartered privileges were not only impaired but destroyed, and its road virtually confiscated without any compensation. The turnpike company sought to enjoin the county, and also asked compensation for the destruction of its franchise, as is shown by the record on file. The bridge had been completed and the route located when that bill was filed. The turnpike company was incorporated in 1848, but no exclusive privileges or franchises were conferred by its charter. The Court held, that when the grant is not by express terms exclusive, it cannot be held to be so by implication (citing 11 Peters, 420); that the County Court may erect or open a road when the same is required by public convenience or necessity, though the effect of the same is to diminish or destroy a franchise formerly

granted to a bridge, ferry or turnpike company. If any property is taken, compensation must be paid, but only for the property actually 'taken, and the damages incidental to the' property, but the loss incident to or depreciation of the profits of the franchise is not to be considered. It was distinctly held that such damage is not a taking of the former franchise which entitles the owner to compensation.

Against these authorities, counsel for the company cite *Red River Bridge Co.* v. *Mayor and Aldermen of Clarksville*, 1 Sneed, 176, in which it was held that the bridge company was entitled to recover of the city of Clarksville compensation for destroying the franchise incident to plaintiff's toll bridge by the construction of a free bridge in close proximity thereto. It was alleged in the bill, and admitted in the answer in that case, that the charter of the company provided that no other toll bridge should be at any time erected within one-half mile of plaintiff's bridge. The Court assumed that the franchise was exclusive, and held that, notwithstanding such exclusive right, it must yield to the public interest, but that plaintiff was entitled to compensation. It is very obvious that the two cases are wholly dissimilar and that the former case is no authority in the present instance. ''A franchise granted by the Legislature which is not exclusive in its terms, may be injured or affected by another franchise granted by the Legislature, without any compensation being made. But where the

grant has been exclusive in its terms, compensation must be made.'' 6 Am. & Eng. Enc. L., 545, 546; *Ayer* v. *Tuskaloosa Bridge Co.*, 27 Am. Dec., 655. That was a case in which it appeared that ''the owner of a ferry franchise claimed that a toll bridge could not be erected near his ferry without compensation, the effect of which, if completed, would be to materially injure, if not entirely destroy, the value of his ferry.'' The Court said, viz.: ''But it is contended on the part of the complainant, that admitting the Legislature has the power, upon principles of public policy, to authorize the establishment of this bridge, and thereby destroy the value of this ferry, that this can only be done by making adequate compensation to him for this loss, on the principle that private property cannot be taken for public uses without just compensation. If this was a private and exclusive grant, founded upon a valuable consideration paid therefor, this argument would undoubtedly be good. But if we have successfully shown that this is not such grant, as we think we have, then this principle does not apply. What property has the complainant in this ferry, except its use? And by what tenure does he claim the right to this use? It was originally granted to him for the benefit of the public; that public, it is now thought, require greater facilities —they have been granted; and if his profits are thereby lessened, has he any cause of complaint? He received his license subject to this contingency,

and must abide by the consequences. Suppose the public convenience should require the road leading to a ferry to be changed, and the old road closed up. The County Court has the power given them to do this. Can the owner of the ferry at the old crossing say that this must be done only upon paying him what he may lose by the change? The fallacy of the proposition appears too plain to admit of elaborate illustration.''

It is claimed, however, that in reaching the free bridge erected by the county, travelers use a portion of plaintiff's turnpike. Counsel very aptly say, in reply to this proposition, viz.: ''This they [the public] have a right to do, and no tolls are collectible for such use of that portion of the pike between the gates.'' A turnpike is a public highway, and travel upon it cannot be restricted. Counsel cite in support of this position *Charles River Bridge Co.* v. *Warren Bridge Co.*, 11 Peters, 545, where Chief Justice Taney, quoting an English opinion, approvingly says: ''The case itself was as strong a one as could well be imagined for giving the canal company, by implication, a right to the tolls demanded. Their canal had been used by the defendants to a very considerable extent in transporting large quantities of coal. The rights of all persons to navigate the canal were expressly secured by the Act of Parliament, so that the company could not prevent them from using it, and the toll demanded was admitted to be reasonable. Yet, as they only used one of

the levels of the canal and did not pass through the locks, and the statute, in giving the right to exact toll, had given ·it for articles which pass 'through any one or more of the locks,' and had said nothing as to toll for navigating one of the levels, the Court held that the right to demand toll in the latter case could not be implied, and that the company were not entitled to recover it. . . . In grants by the public nothing passes by · implication." *Ib.*

Without further elaboration or citation of authorities, we think the demurrer was properly sustained, and the judgment is affirmed.