## WEST TENNESSEE POWER & LIGHT CO. v. CITY OF JACKSON et al.

### No. 7879.

Circuit Court of Appeals, Sixth Circuit.

June 8, 1938.

980

S. P. Walker, of Memphis, Tenn. (Waring, Walker & Cox and Sam P. Walker, all of Memphis, Tenn., on the brief), for appellant.

W. P. Moss, of Jackson, Tenn. (W. P. Moss, of Jackson, Tenn., on the brief), for appellees.

Before HICKS, ALLEN, and HAMILTON, Circuit Judges.

ALLEN, Circuit Judge.

This is an equity case in which appellant, a private utility generating and distributing electric power, seeks to enjoin the City of Jackson, Tennessee, from building or acquiring an electric distribution system and supplying its inhabitants with electric current. An injunction is also prayed for, restraining appellees from selling bonds and carrying out a contract with the Tennessee Valley Authority for the resale of energy purchased from the Authority. The District Court denied the motion for preliminary injunction and dismissed the bill for want of equity.

Appellant's two predecessor corporations, under proper ordinances duly enacted by the City of Jackson, were granted certain street railway and power and light franchises. Appellant is the lawful owner of all of these rights and privileges. The controversy here involves only the exclusive right of appellant to use the streets for the distribution of electric power. This franchise is derived from an ordinance enacted in 1902, by which the City of Jackson granted "the sole and exclusive privilege of manufacturing and distributing and selling incandescent lights and furnishing power for the operation of elevators, fans, engines, and for any other purpose for which electric power is desired; for a period of 25 years from the passage of this ordinance * * * ." This ordinance was later extended to May 23, 1937.

In 1909 the legislature of the State of Tennessee repealed the charter of the City of Jackson, and enacted a statute granting a new charter which provided that "the Board of Mayor and Aldermen of the city of Jackson shall have power and authority to provide * * * for the lighting and heating of the city by gas, electricity, or otherwise; * * * and to effectuate any or all of these objects they may contract with any individuals or corporations, and grant them the use of the streets and alleys of the city for such periods as they may deem proper; * * * and, provided, also, that no exclusive right or franchise in the streets and avenues be granted to any person, firm or corporation." Acts Tenn.1909, c. 407, § 22. .

In 1913 the franchises of appellant's predecessor, including the exclusive franchise of 1902, were extended by the city to fifty years from that date, as follows:

"Be It Ordained By The Legislative Counsel Of The City Of Jackson, That all the rights, privileges, and franchises now held, owned and controlled by the Jackson Railway & Light Company arising and existing by and under any and all ordinances heretofore passed by said municipality, the City of Jackson, be and the same are hereby so extended as that the same * * * shall continue and exist for the full term of fifty (50) years next succeeding the date upon which this ordinance shall become and be effective as a valid law and ordinance of said municipality, such rights and franchises so extended to be subject to the terms and conditions of the ordinances granting the same except as modified or amended by the provisions of this ordinance."

This extension ordinance was approved by popular vote.

The city subsequently took steps to construct and operate a municipal distribution system, and this injunction suit followed.

Appellant contends that the city, by enacting the extension franchise of 1913, agreed not to compete with the private utility.

The single question presented is whether the city, by virtue of extending an exclusive franchise, in violation of the state statute of 1909, has precluded or estopped itself from entering into the business of supplying its inhabitants with electric current and from erecting and operating a distribution system toward that end.

We think the District Court rightly dismissed the bill for two reasons: (1) That the extension of franchises in 1913 was inoperative as an extension of an exclusive grant, since to give it that effect would

violate the statute of 1909, and (2) that the agreement by the city not to enter into competition with appellant arises, if at all, by implication, and the universal rule is that all doubts in such matters will be resolved in favor of the public.

As to the first point, we note that the franchise granted in 1902, as first extended, expired May 23, 1937, and this bill was filed October 16, 1937. Hence appellant bases its prayer for injunction squarely upon the extension ordinance of 1913. But this ordinance was enacted subsequent to the charter of 1909, and the exclusive franchise embodied therein was in direct violation of the charter, and hence is null and void. Ottawa v. Carey, 108 U.S. 110, 111, 2 S.Ct. 361, 27 L.Ed. 669. A municipality cannot exceed the powers granted in its charter. It can exercise only powers expressly authorized. A city may not bind itself by any contract which violates the statutes or its charter. Edison Electric Co. v. City of Pasadena, 9 Cir., 178 F. 425; City of Ft. Scott v. W. G. Eads Brokerage Co., 8 Cir., 117 F. 51. Therefore the provisions making the franchise of 1913 exclusive, considered as a contract, were as though they had never been written. They could not be ratified, and the city was not estopped to deny their validity. Cf. Texas & Pacific Ry. Co. v. Pottorff, 291 U.S. 245, 260, 54 S.Ct. 416, 420, 78 L.Ed. 777, in which the court stated the general rule as to ultra vires contracts as follows:

"It is the settled doctrine of this court that no rights arise on an ultra vires contract, even though the contract has been performed; and that this conclusion cannot be circumvented by erecting an estoppel which would prevent challenging the legality of a power exercised."

Appellant was charged with knowledge of the limitations upon the powers of the city and entered into the contract of 1913 at its peril. This likewise is the universal rule. Cf. City of Ft. Scott v. W. G. Eads Brokerage Co., supra; City of Enterprise v. Rawls, 204 Ala. 528, 86 So. 374, 11 A.L.R. 1175; Higginson v. City of Fall River, 226 Mass. 423, 115 N.E. 764, 2 A.L.R. 1209; Nashville v. Sutherland & Co., 92 Tenn. 335, 21 S.W. 674, 19 L.R.A. 619, 36 Am.St.Rep. 88.

Appellant urges, however, that under the Tennessee statute the city could contract that it would not compete with appellant, and that in the 1913 ordinance the city therefore made a valid promise that it would not enter the business of supplying electric power. It bases this contention upon that part of the ordinance extending prior exclusive franchises. Assuming, without deciding, that the contract is separable, and that the extension ordinance is valid in so far as it authorizes appellant to use the streets in the distribution of electric current, that part which extends an exclusive franchise, as above stated, is void and unenforceable; but it is from this grant, void from its inception, that appellant asks the court to imply an agreement not to compete.

The city made no such explicit agreement; but appellant contends that the decisions in Walla Walla City v. Walla Walla Water Co., 172 U.S. 1, 19 S.Ct. 77, 43 L. Ed. 341, and Vicksburg v. Vicksburg Waterworks Co., 202 U.S. 453, 26 S.Ct. 660, 50 L.Ed. 1102, 6 Ann.Cas. 253, require such an implication.

In the Walla Walla Case, the city had general statutory authority to grant franchises for supplying its inhabitants with water. The statute of Washington Territory, Loc. & Priv.Laws Terr.Wash.1883, p. 273, § 10, under which the city was incorporated provided that "none of the rights or privileges herein granted [including the power to provide a sufficient supply of water] shall be exclusive, nor prevent the council from granting the same rights to others." The city granted a franchise to the water company and as a part of the contract agreed that it would not compete during the existence of the contract. The Supreme Court held that this stipulation was such as the city might lawfully make as an incident of the principal undertaking, and enforced the stipulation against the city. The holding is not controlling here, and is readily distinguishable from the instant case on the facts. The statute of Washington Territory did not forbid the contract made by the city. The Tennessee statute forbids the exclusive provisions of the contract made by the City of Jackson. The contract there was not exclusive and granted no monopoly, and the Supreme Court took that fact into consideration in its holding. Here the contract is exclusive and grants a monopoly. There the contract was explicit that the city would not enter the business of supplying Walla Walla with water. In the instant case no such promise was made. The City of Jackson in a blanket enactment merely extended an ordinance which contained an exclusive grant.

In the Vicksburg Case, an exclusive right and privilege had been granted by the city to the waterworks company. The statutes of Mississippi did not then forbid such an exclusive privilege. This case therefore sheds little light upon the present problem. The city here does not contend that it could not by proper contract agree not to compete with appellant; it contends that it has not made such an agreement, and the fact that the city might lawfully exclude itself from competition, but has not done so, is not conclusive.

Since the extension of the exclusive contract is forbidden by Tennessee statute, and is null and void, appellant asks that the court imply from an invalid provision in the contract a valid promise not expressed therein.

■ It is the general rule concerning public grants that all doubts in such matters are resolved in favor of the public. Turnpike Co. v. Montgomery County, 100 Tenn. 417, 45 S.W. 345, 58 L.R.A. 155. If parties wish to guard against contingencies of this kind, they must do so by clear and explicit language. In Hamilton Gaslight & Coke Co. v. Hamilton City, 146 U.S. 258, 13 S.Ct. 90, 36 L.Ed. 963, it was stated that this rule governed even though the erection and maintenance of gas works by the city at public expense and in competition with the plaintiff might ultimately impair, if not destroy, the value of plaintiff's works. Other decisions of the Supreme Court to the effect that a municipality cannot be precluded from building and operating utility services of its own except by express agreement, are the following: Skaneateles Waterworks Co. v. Skaneateles, 184 U.S. 354, 22 S.Ct. 400, 46 L.Ed. 585; Helena Waterworks Co. v. Helena, 195 U.S. 383, 25 S.Ct. 40, 49 L.Ed. 245; Knoxville Water Co. v. Knoxville, 200 U.S. 22, 26 S.Ct. 224, 50 L.Ed. 353; City of Joplin v. Southwest Missouri Light Co., 191 U.S. 150, 24 S.Ct. 43, 48 L.Ed. 127; Madera Waterworks v. Madera, 228 U.S. 454, 33 S.Ct. 571, 57 L.Ed. 915.

In the Helena Case the court stated (page 43) "It has not specifically bound itself not so to do [construct its own plant], and * * * nothing is to be taken against the public by implication. * * * Had it been intended to exclude the city from exercising the privilege of establishing its own plant, such purpose could have been expressed by apt words * * *." Although in the Knoxville Case the city had contracted that no privilege would be granted to any other persons or corporation to furnish water, the court held that the city, in absence of a special stipulation to that effect, was not precluded from establishing its own independent system of waterworks, stating that (page 228) "The authorities are all agreed that a municipal corporation * * * is not to be shorn of its powers by mere implication.

■ In the Skaneateles Case the court declared that there is no implication that the grantor will never do any act by which the value of the franchise in the future may be reduced. Such a contract should not be left to implication, and therefore a contract not to compete cannot here be implied against the city.

■ Appellant urges that expenditures made in reliance upon the extension franchise will cause it to suffer damages in decrease of the value of its plant and investment, and may destroy its business unless the injunction is granted, but this furnishes no foundation for appellant's claim. Skaneateles Waterworks Co. v. Skaneateles, supra; Turnpike Co. v. Montgomery County, supra. Cf. Puget Sound Power & Light Co. v. Seattle, 291 U.S. 619, 54 S.Ct. 542, 78 L.Ed. 1025, in which the Supreme Court held that the city could tax a private utility with which it was in competition, and that this was a risk which the utility took when it entered the field. This contention is disposed of by Alabama Power Co. v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. ——, and we paraphrase the words in that decision and apply them here. The claim that appellant will be injured, perhaps ruined, by the competition of the municipality presents a clear case of damnum absque injuria. Stated in other words, the municipality has the right under state law to engage in the business in competition with appellant, since appellant has been given, and can be given, no valid exclusive franchise. If its business be curtailed or destroyed by the operations of the municipality, it will be by lawful competition from which no legal wrong results. What appellant anticipates is damage to something it does not possess—namely, a right to be immune from lawful municipal competition.

The decree is affirmed.