IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT NASHVILLE

_____

TOWN OF MORRISON,

    Plaintiff-Appellant,

Vs.

WARREN COUNTY, TENNESSEE,

    Defendant-Appellee.

Warren Chancery No. 4578
C.A. No. 01A01-9508-CH-00332

_____

FROM THE WARREN COUNTY CHANCERY COURT

THE HONORABLE JEFFERY F. STEWART

B. Timony Pirtle of McMinnville
For Plaintiff-Appellant

Larry B. Stanley, Sr., of McMinnville
For Defendant-Appellee

*VACATED IN PART, AFFIRMED IN PART AS MODIFIEDB*

Opinion filed:



**FILED**

**December 18, 2001**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.

CONCUR:

ALAN E. HIGHERS, JUDGE

DAVID R. FARMER, JUDGE

This appeal involves a dispute between Warren County, Tennessee and the Town of Morrison, a municipality located within Warren County, regarding the disposition of the revenue generated by the county local option sales tax. On March 21, 1988, plaintiff, Town of Morrison (hereinafter Morrison), filed a complaint for declaratory judgment against defendant, Warren County. The complaint alleges that under T.C.A. § 67-6-712 (Supp. 1995), a justiciable controversy exists between the parties concerning their respective rights to distribution of the county local option sales tax revenue. The complaint avers that the Warren County local option sales tax was adopted in 1969 and increased in 1976 and 1985. Morrison alleges that since 1969 the tax revenues have been collected by the Tennessee Department of Revenue and distributed to Warren County, but Warren County has refused to pay Morrison its share of the taxes as required by T.C.A. § 67-6-712 (2)(B). The complaint seeks a declaration of the rights of the parties to the sales tax revenues, and an accounting of, and a judgment for, Morrison's share of the local option sales tax.

The facts are virtually undisputed. In 1969, the citizens of Warren County voted to consolidate the school systems into a single county-wide system, and a one cent local option sales tax was approved by voter referendum to fund the consolidation. The distribution of the tax revenue is provided for in T.C.A. § 67-6-712 (Supp. 1995) which states in pertinent part:

> 67-6-712. Distribution of revenue. - (a) The tax levied by a county under this part shall be distributed as follows:
>
> (1) One half (1/2) of this proceeds shall be expended and distributed in the same manner as the county property tax for school purposes is expended and distributed; and
>
> (2) The other one half (1/2) as follows:

2

> (A) Collections for privileges exercised in unincorporated areas, to such fund or funds of the county as the governing body of the county shall direct;
>
> (B) Collections for privileges exercised in incorporated cities, and towns, to the city or town in which the privilege is exercised;
>
> (C) However, a county and city or town may by contract provide for other distribution of the one half (1/2) not allocated to school purposes.

*        *        *

On January 24, 1969, Charles Lawrence, who at the time was the Mayor of the Town of Morrison, entered into a contract on behalf of the Town with Warren County. The contract authorized Morrison's share of the local option sales tax to be paid into the Warren County general fund. The contract was not attested by Morrison's city recorder, nor was there any ordinance or resolution from the Board of Aldermen which authorized the mayor to sign the contract on behalf of Morrison. By letter dated August 24, 1970, the mayor of Morrison notified Warren County that the January 24, 1969, contract was void, and that in the future Morrison should be paid its share of the tax revenue. Apparently Warren County did nothing in response to this letter.

In 1976 and in 1985, increases in the local option sales tax were approved by referendum of the voters. By letter of March 18, 1986, Morrison, through counsel, demanded its share of the sales tax revenue. Warren County refused to give any of the revenue to Morrison, and on March 21, 1988, the present suit was filed.

The chancellor found that the proof established the existence of either a contract or "at least an implied contract" between Morrison and Warren County regarding the 1969 sales tax, and that Morrison was estopped from voiding the contract. The chancellor also found that there was no contract between

Morrison and Warren County regarding the 1976 and 1985 sales tax increases.

Finally, the chancellor found that Morrison did not protest the distribution of the tax until suit was filed; therefore, Morrison is estopped from collecting its share of the revenue generated by the 1969 sales tax. The final order provides:

> 1. That the 1969 sales tax increase in Warren County shall continue to be used for education without regard to the locale of its collection.
>
> 2. That the Trustee for Warren County shall pay to the Plaintiff the lump sum of $23,158.25 which represents its distributive share of sales tax collection from the 1976 and 1985 increases beginning March 1, 1990 through November, 1991.
>
> 3. That the Trustee for Warren County shall, beginning in January, 1992, pay to the Plaintiff its statutory share of sales tax generated from the 1976 and 1985 increases, each and every month, as determined by the Department of Revenue, State of Tennessee.

The Town of Morrison has appealed, and the first issue presented for review, as stated in its brief, is:

> Whether the Trial Court erred in applying the doctrine of implied contract to enforce the unauthorized act of the former Mayor of plaintiff in executing a contract permitting defendant to retain the plaintiff's share of the local option sales tax which was not supported by resolution or ordinance approved by the Mayor and Aldermen of plaintiff?

Morrison first asserts that the contract is void as an ultra vires action, because the power to contract away the town's tax revenue is not authorized by the town's charter or other legislative acts. Municipalities "may exercise only those express or necessarily implied powers delegated to them by the Legislature in their charters or under statutes." *City of Lebanon v. Baird*, 756 S.W.2d 236, 241 (Tenn. 1988). T.C.A. § 67-6-712 (a)(2)(C) expressly provides that a city or town "may by contract provide for other distribution" of its share of the local option sales tax. Therefore, Morrison is specifically authorized to contract

4

in this manner by the Legislature.

Warren County does not contest Morrison's assertion that the January, 1969 contract that provides for Morrison's share of the local option sales tax to be paid to the county general fund was not executed as required by the town's charter. Our Supreme Court, addressing such a situation in *City of Lebanon* stated:

> When the city has attempted to enter [sic] a contract that is *ultra vires* because it was not entered into in the authorized manner, the issue is often presented as to whether the concepts of equitable estoppel or implied contract are applicable. In addition to the equities of the case, the application of these concepts depends on whether the contract is executory or partially or fully performed. The law of municipal corporations in Tennessee has long recognized the difference between executory and performed contracts with cities. As this court noted in *Mayor and City Council of Nashville v. Hagan*, 68 Tenn. 495, 507 (1876); "where the contract is executory the corporation cannot be bound unless made in pursuance of provisions of its charter; but where the contract is executed, and the corporation has enjoyed benefit of the consideration, an assumpsit will be implied."

756 S.W.2d at 243.

In *City of Lebanon*, the Supreme Court, in dealing with the question of estoppel or implied contract, said:

> Ultimately, the application of estoppel or implied contract must be determined on the facts and equities of the particular case. The principles of estoppel are well settled and not every case will require application of estoppel or of implied contract. The classic case of estoppel in the present context is the acceptance of the benefits of a contract and the subsequent refusal of a city to pay for the benefits received. *See, e.g., Trull v. City of Lobelville*, 554 S.W.2d 638, 641-642 (Tenn.App. 1976). For estoppel to arise, the act must have been done with the knowledge that it would be relied upon and the other party has acted in reliance without either knowledge of the true state of affairs or the means of learning the true state of affairs. *E.g., Early Co. v. Williams*, 135

> Tenn. 249, 261, 186 S.W. 102, 105 (1916). "When both parties have the same means of ascertaining the truth, there can be no estoppel." *Id.* (citations omitted). *See also Rambeau v. Farris*, 186 Tenn. 503, 508, 212 S.W.2d 359, 361 (1948). Moreover, when entering a contract with a municipality, "[o]ne dealing with municipal officers, boards, or committees is bound at his peril to take notice of the limitation of their authority." *Kries & Co. v. City of Knoxville*, 145 Tenn. 297, 305, 237 S.W. 55, 57 91921). The contents of a city charter are public and readily available to all who deal with a city. *Nashville v. Sutherland & Co.*, 92 Tenn. 335, 339-340, 21 S.W. 674, 675 (1893).

756 S.W.2d at 244.

Warren County is charged with the knowledge to be obtained from Morrison's charter. Even if the county is not charged with that knowledge, in August, 1970, Warren County was notified that the 1969 contract was not authorized by the city. The contract itself has no time limit, and its purpose is to annually distribute the sales tax receipts to Warren County. The contract provides for the receipts to be paid into the county general fund, and obviously the county relied upon the receipts in planning its budget requirements.

The suit in this case was not filed until March of 1988, some nineteen years after the execution of the contract and some eighteen years after Morrison's letter asserting that the contract was void. Warren County argues that equitable estoppel and the doctrine of *laches* should prevent Morrison from voiding the contract. In *Hannewald v. Fairfield Communities, Inc.*, 651 S.W.2d 222 (Tenn. App. 1983), this Court said:

> Laches is *based* on equitable estoppel. *State v. McPhail*, 156 Tenn. 459, 2 S.W.2d 413 (1928); *Clark v. American Nat'l Bank and Trust Co. of Chattanooga*, 531 S.W.2d 563 (Tenn.App.1974). Laches is more than mere delay, and depends on the facts and circumstances of each individual situation:
>
> > Long delay alone in the prosecution of a claim is insufficient for the application of the doctrine of laches. The present

6

> circumstances of the parties must be considered. There must be actual acquiescence or that implied from the circumstances of the case, in the conduct of the defendant. Whether or not such exists is dependent upon the facts. And whether the facts are sufficient is dependent upon the Court applying those facts. One Court may reach a different conclusion than another.

*Clark, supra*, at 573.

> The delay must materially affect the right of another for the doctrine of laches to apply. *Robertson v. Davis*, 169 Tenn. 659, 90 S.W.2d 746 (1936); *Hamilton Nat'l Bank v. Woods*, 34 Tenn. App. 360, 238 S.W.2d 109 (1951). In fact, this has been held to be the most important factor:

>> . . . the determinative test as to laches, which may be available as a successful defense, is not the length of time that has elapsed, but whether, because of such lapse of time, the party relying on laches as a defense has been prejudiced by the delay.

> *Brister v. Estate of Brubaker*, 47 Tenn. App. 150, 162-63, 336 S.W.2d 326, 332 (1960). Finally, "the determination of all issues on questions of laches and estoppel is the function of the chancellor, and his decision thereon will not be reversed on appeal unless it is clearly shown to be wrong." *Freeman v. Martin Robowash, Inc.*, 61 Tenn. App. 677, 690-91, 457 S.W.2d 606, 612 (1970).

651 S.W.2d at 228.

The chancellor found that Morrison was estopped from declaring the contract void. The record indicates that Morrison allowed Warren County to rely upon the sales tax receipts in planning and carrying out its governmental responsibilities, and that the county, in reliance on these receipts, refrained from taking other measures to raise revenues. We agree with the chancellor that the facts of this case justify imposing the doctrine of equitable estoppel against

7

Morrison to bar it from recovering the tax revenue paid to Warren County from 1969, the year the contract was signed, through 1988, the year this action was filed. Since Warren County relied on the tax receipts in planning its budget and Morrison only objected to Warren County's retention of the revenue through two letters and later impliedly acquiesed in the county's actions, Morrison should be estopped from recovering the tax revenue paid to Warren County prior to the institution of this action. Morrison should not be estopped, however, from recovering the tax revenue collected in the years following 1988 (that is, from 1989 forward), because Morrison's institution of this action in 1988 in conjunction with the fact that Warren County was aware or should have been aware that the contract was ultra vires under the town's charter, was sufficient to alert Warren County that it could no longer rely on Morrison's share of the tax receipts in planning its budget. Moreover, at the time Morrison filed suit, the obligations of the parties under the contract were executory with respect to disbursement of the tax revenue collected in the years following 1988. As previously stated, "The law of municipal corporations in Tennessee has long recognized the difference between executory and performed contracts with cities." *City of Lebanon v. Baird*, 756 S.W.2d 236, 243 (Tenn. 1989). "[W]here the contract is executory the corporation cannot be bound unless made in pursuance of provisions of its charter; but where the contract is executed, and the corporation has enjoyed the benefit of the consideration, an assumpsit will be implied." *Id.* (quoting *Mayor and City Council of Nashville v. Hagan*, 68 Tenn. 495, 507 (1876)). By filing suit in 1988, Morrison sought to void an ultra vires contract under which its obligations to Warren County were executory; therefore, equitable estoppel should not be applied to bar Morrison from recovering its lawful share of future tax revenues. Accordingly, the trial court's order awarding Warren County the

8

future revenue generated by the sales tax, is vacated. The Town of Morrison is entitled to recover its portion of the sales tax paid under the contract from the date of filing suit.

The second issue for review, as stated in appellant's brief, is:

> Whether the trial court erred in applying the doctrine of equitable estoppel to bar the right of plaintiff to recover its lawful share of the local option sales tax from defendant through the day of the trial of this cause?

Warren County does not contest the chancellor's ruling concerning the 1976 and 1985 sales tax increase. Morrison asserts that the chancellor erred in finding that it "had not protested the distribution until the filing of this suit." As we previously noted, Morrison did notify Warren County that it was voiding the contract; however, Morrison then delayed filing suit for about eighteen years. We have discussed the equitable estoppel and laches doctrines, and for the same reasons we have heretofore stated, they should be applicable for the 1976 and 1985 tax increases. The chancellor should have allowed recovery of the taxes from the date of filing suit, and the order of the trial court is modified to that extent.

In summary, the order of the trial court concerning the 1969 sales tax receipts is vacated, and the Town of Morrison is awarded its share of the 1969 local option sales tax revenue from the date of filing suit. The order of the trial court concerning the 1976 and 1985 sales tax increase is modified to award judgment to Town of Morrison for its share of those taxes from the date of filing suit. The case is remanded to the trial court for further proceedings to determine the amounts due the Town of Morrison. The order of the trial court in all other respects is affirmed. Costs of the appeal are assessed against Warren County.

_____
W. FRANK CRAWFORD,

9

_____
PRESIDING JUDGE, W.S.

CONCUR:

_____
ALAN E. HIGHERS, JUDGE

_____
DAVID R. FARMER, JUDGE