THE CITY OF BELLEVILLE, Appellee, *vs.* THE ST. CLAIR
COUNTY TURNPIKE COMPANY, Appellant.

*Opinion filed April 23, 1908—Rehearing denied June 9, 1908.*

1. CONSTITUTIONAL LAW—*a provision forbidding taking of private property includes right of user.* The provision of the constitution forbidding the taking or damaging of private property for public use without just compensation is not limited to the tangible subject matter or *corpus* of the property, but includes the right of user and enjoyment of it, and when such right is destroyed or taken for public use the owner is entitled to compensation.

2. SAME—*"due process of law" is synonymous with "law of the land."* The words "due process of law," used in the constitution, are synonymous with "law of the land," and mean the due course of legal proceedings according to the rules and forms which have been established for the protection of private rights.

3. TOLL ROADS—*right of turnpike company under its charter is a valuable property right.* A charter of a turnpike company which confers upon the company, in consideration of building and keeping the turnpike in repair, the right to exact tolls for twenty-five years or until the State shall purchase the road, is a contract, and the interest of the company is a valuable property right, the practical destruction of which amounts to a taking of property within the meaning of the constitution.

4. SAME—*city cannot arbitrarily take property of toll road without compensation.* A city has no power to arbitrarily deprive a turnpike company of its property, without payment of compensation, by annexing to the city a narrow strip of land some six miles long and extending in width one thousand feet on each side of the turnpike, there being no "overruling necessity," public or otherwise, which justifies such taking.

5. MUNICIPAL CORPORATIONS—*exercise of police power is not without limitations.* While the police power of a city is broad and far reaching yet it is not without its limitations, and such power cannot be exercised in violation of the constitution nor for the purpose of arbitrarily invading or destroying private rights.

6. SAME—*when taking of property of toll road cannot be justified as a proper exercise of police power.* The taking by a city of nearly six miles of a turnpike company's road by the annexation of a narrow strip of land embracing such road cannot be justified as a proper exercise of police power, upon the mere ground that it will inconvenience the city and the residents of the annexed territory if the company continues to control and manage its road.

APPEAL from the Circuit Court of St. Clair county; the Hon. R. D. W. HOLDER, Judge, presiding.

This is a bill for injunction filed by appellee in the circuit court of St. Clair county October 16, 1906, praying that appellant, its officers and agents might be restrained from maintaining upon any part of a certain turnpike, toll gates, bars and obstructions in territory within the limits of said city of Belleville. October 27, 1906, a temporary order of injunction was entered by one of the judges of that court. After the pleadings were finally settled the case was heard upon bill, answer and replication, together with a stipulation of facts, and on December 24, 1907, the court entered a decree for perpetual injunction as prayed in the bill. Thereupon appellant duly excepted and prayed an appeal to this court.

In 1845 a charter was granted to the town (now city) of Belleville, under which the municipal authorities were empowered to regulate, pave and improve streets, alleys and lanes within the limits of said town and have complete control over the same. February 13, 1847, the charter of appellant company was granted by the legislature for a term of twenty-five years. (Public and Private Laws of 1846, p. 71.) By this act appellant was authorized "to construct and maintain a turnpike road from the bank of the Mississippi river opposite to the city of St. Louis, to High street, in Belleville, in St. Clair county, Illinois, said road to be made on the Great Western mail route." The act also provided as to the width and character of the road to be built and that the State and county roads might intersect and cross said turnpike; also that the construction should begin within one year, and that seven miles across the river bottom should be the first work done, and that this should be completed within three years and the balance of the road within five years. Section 8 provided: "As soon as one mile and a half of said road is completed, said corporation shall have

a right to erect a toll gate, and charge toll proportionable to the rate of toll hereinafter specified; and when the whole of said road is completed, the said corporation shall have power to erect and maintain such toll houses, toll gates and other buildings for the accommodation and management of the said road, and the transport thereon, as may be deemed suitable to their interest: *Provided,* that no toll gate shall be erected or maintained east of the point on said road where the lower, commonly called the southern, road, leading from Belleville to St. Louis, now leaves the Great Western mail route: *Provided, further,* that persons traveling on said road east of the first named gate shall not be charged any toll for such travel," etc. It then provided, among other things, the rate of toll, how it should be collected, as to the inspection of the road and its repair, and that the county authorities should "keep in good repair that portion of the said road, after it is completed, lying between the western limits of the corporation of the town of Belleville and the fork of the road leading from Belleville to St. Louis; and it shall be the duty of the trustees of the town of Belleville to keep and maintain that part of the said road lying within the corporate limits of the town of Belleville in good repair after the same shall be completed by the company." Section 15 provided: "The State reserves the right to purchase said road, at the expiration of said charter, by paying to said corporation the original cost of said road laid out and expended in constructing the same, to be ascertained by examination of the books of said corporation, by commissioners to be appointed by the legislature; and in case of non-payment or redemption by the State at the expiration of the charter, the said road, with all its appendages, shall remain in the possession of said corporation, to be used, controlled and possessed under the rights and restrictions in this charter contained, and may demand and receive tolls, as herein stated, until such time as the State shall refund said sum of money, the original cost of construction, and

which right the State hereby reserves." Section 16 provided that the stock of the corporation should be personal property, subject to sale and transfer and also to levy and sale on execution. Section 17 provided that said corporation should be safe and secure, "for and during the term of the charter and until the road shall be redeemed by the State as provided, in all the rights, interest and privileges granted and intended to be conferred to said company by the strict letter and meaning thereof, the corporation complying strictly, clearly and fully on their part." This charter was amended by the legislature in 1849, 1851, 1853, 1857, 1859, 1861 and 1865, and such amendments were accepted and acted upon by appellant company. The amendment of 1859 (Public Laws of 1859, p. 726,) provided, among other things, that sections 11 and 12 of the original charter, with reference to the toll charges of the company, were repealed, and in lieu thereof appellant company should be subject to the provisions of a general act as to plank roads, passed February 15, 1857; also that appellant company might vacate, by resolution, "any part of their road within the limits of the town of West Belleville."

From the stipulation of facts it appears that from the center of High street, in the city of Belleville, to the "lower or southern road" mentioned in said charter, is 10,065 feet. Said lower or southern road is not now, and never was, a part of the St. Clair county turnpike. The western limits of the original town of Belleville at the time the charter was granted to said appellant were 3080 feet westerly from the center of High street. Thereafter they were extended west to Mill street, a distance of 3585 feet from the center of High street; then to the center of Silver street, a distance of 4568 feet from the center of High street; then to the center of Logan street, 6450 feet from the center of High street; thereafter they were extended and located 8675 feet westerly from the center of High street. The first toll gate of appellant as it was originally located and as it stood at

the time of said annexation was 12,156 feet west of the center of High street.   On June 18, 1906, a majority of the legal voters and a majority of the property owners in certain territory petitioned, in writing, that such territory should be annexed to said city, and thereafter, in pursuance of a resolution adopted by the city authorities, the question of the annexation of said territory was submitted to the people at an election held July 31, 1906, resulting in 2019 votes for and 88 against annexation.   On September 17, 1906, the city council passed, and the mayor thereafter approved, an ordinance annexing said territory.

Previous to said last annexation the city limits were 3481 feet east of said first toll gate on said turnpike.   By said annexation the city limits were extended westerly six miles, the territory so annexed being that lying within 1000 feet north and 1000 feet south of the center of the turnpike road.   In other words, the strip annexed was 2000 feet in width north and south and extended six miles east and west, said turnpike road running through the center of the strip east and west.   On this six miles of appellant's turnpike were situated two toll houses and two toll gates, where toll was being collected at that time by appellant, and said company continued to charge and collect toll and exercise its rights and privileges under said charter until October 29, 1906, when it was restrained by the temporary writ of injunction.   Immediately after this writ was served on appellant, appellee assumed and exercised jurisdiction and control of said St. Clair county turnpike within the territory thus annexed.   All of the roadway within the city of Belleville, as the limits existed prior to said last mentioned annexation of territory, has been permanently improved by paving the entire roadway with brick and constructing a sidewalk and public sewers, the cost being paid by special assessment, free from any charge against the turnpike company.   The improvement of said road was done openly and notoriously, without any adverse claim or pretense of claim on the part

of said company or anyone in its behalf.   Prior to the last annexation of territory appellant company had never collected or attempted to collect toll within the corporate limits of the city of Belleville.   The turnpike road has been inspected in the manner provided by the general law of 1857 and amendments thereto.   So much of said turnpike road as is now situated within the exclusive limits of the city of East St. Louis has been within the exclusive control and management of the authorities of that city.

The State of Illinois has never redeemed said turnpike road as provided under the act of 1847, and has exercised no option to pay to the turnpike company the cost of said road as in said act provided.   The turnpike road has remained in the possession of and been operated by appellant company from its organization under said act, and said appellant claims the right to continue to maintain and operate the turnpike and the toll gates and toll houses in question, and to collect toll, under and by virtue of its charter and amendatory acts thereto, the same after as before the annexation of said six-mile strip of land.

WILLIAM BAUM, and FORMAN & WHITNEL, for appellant.

A. H. BAER, Corporation Counsel, (J. M. HAMILL, of counsel,) for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

The charter of appellant, in consideration of building and keeping in repair the turnpike, conferred upon it the right to exact certain tolls for twenty-five years, and as much longer as the State should fail to purchase the road. The charter was a contract.   (*Turnpike Co.* v. *Illinois*, 96 U. S. 63; *St. Clair County Turnpike Co.* v. *People*, 82 Ill. 174.)   The interest of appellant, under its charter, in the public highway in question has been called by this court an

234—28

easement. (*Trotier* v. *St. Louis, Belleville and Suburban Railway Co.* 180 Ill. 471.) Whether the interest of appellant is denominated a franchise or an easement, it is a valuable property right, and its practical destruction would be the taking of property within the constitution. (Lewis on Eminent Domain, secs. 135, 142.) So, also, the interfering with such an interest may be, *pro tanto,* a taking of property which will entitle the owner to compensation. (Lewis on Eminent Domain, secs. 56, 137.) Private property forbidden by the constitution to be taken or damaged for public use without just compensation is not limited to the tangible subject matter or *corpus* of the property, but includes the right of user and enjoyment of it. When such rights are destroyed or taken for public use their owner is entitled to compensation. *Rigney* v. *City of Chicago,* 102 Ill. 64; *Chicago and Western Indiana Railroad Co.* v. *Ayers,* 106 id. 511; *Illinois Central Railroad Co.* v. *City of Bloomington,* 76 id. 447.

Appellant contends that the annexation of said territory six miles in length and 2000 feet in width to the appellee city and the taking possession of the turnpike and the toll gates in question, thereby preventing appellant from collecting tolls under the charter, is contrary to the provisions of the United States constitution in that it impairs contract obligations, (U. S. Const. art. 1, sec. 10,) and is also the taking of private property for public use without just compensation, (5th amendment to U. S. Const.; Const. of Ill. art. 2, sec. 13;) and is depriving a person of property "without due process of law." (Const. of Ill. art. 2, sec. 2.) Appellee contends that the charter of appellant, construed with the statutes affecting toll roads, authorized the taking possession of that portion of the turnpike of appellant as set out in the foregoing statement. The further contention is made by appellee that even though the charter did not permit such taking, it was still fully authorized in the exercise of police power. If such taking cannot be justified on one

of these grounds then it must be held to be unconstitutional, as depriving appellant of its property without due process of law, for it then would be of such an arbitrary and unusual character as to condemn it as unknown to the law of the land.   Cooley's Const. Lim. (7th ed.) p. 504.

The words "due process of law," in the constitution, are synonymous with "law of the land." (*Braceville Coal Co. v. People,* 147 Ill. 66.) Due process of law means the due course of legal proceedings according to the rules and forms which have been established for the protection of private rights. (*Burdick* v. *People,* 149 Ill. 600.) It is the principle of law intended "to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice." *Bank of Columbia* v. *Okely,* 4 Wheat. (17 U. S.) 235;   Cooley's Const. Lim. (7th ed.) p. 505.

Appellee calls attention to the provisions of the turnpike charter that no toll gate should be erected east of a certain point west of the town (now city) of Belleville, that no toll should be charged by the company for travel east of the junction with the southern road leading to St. Louis and for a stipulated distance therefrom, that upon the municipal authorities of Belleville devolved the duty of keeping and maintaining that part of the turnpike road lying within the corporate limits of the town, and argues that these provisions, considered in connection with the charter of Belleville, granted in 1845, vesting in the municipal authorities the power to control its streets within the corporate limits, lead to the conclusion that the legislature, in granting appellant's charter, intended so to limit the rights of appellant therein that it could not interfere with the necessary growth and development of the municipalities lying along the line of said turnpike. It further contends that the act of 1874, governing toll roads, must be held to apply to this road. Section 12 of that act provides:   "No toll gate shall be erected or kept, or toll demanded, within the corporate limits

of any incorporated city or within 160 rods of such limits," (Hurd's Stat. 1905, p. 1996,) and appellee insists that this section, construed in the light of the reasoning in *Snell* v. *City of Chicago,* 133 Ill. 413, authorizes the taking possession of said turnpike and toll gates in the manner indicated.

The annexation appears to have been petitioned for by a majority of the legal voters and a majority of the property owners in said territory. Whether there were five or five thousand inhabitants in the annexed district is not shown. The annexation proceedings appear to be in conformity with the statute, (Hurd's Stat. 1905, sec. 1, p. 322,) but to justify the taking of this property without paying for the interest of appellant requires something more. The right to private property is in a sense sacred, resting upon equities within reasonable limitations and restrictions and having regard to the general welfare and public policy. It cannot be a right examined, settled and defended on the separate and distinct consideration of a particular case, but rather on the broad and general ground which embraces the welfare of the whole community, wherein the interests of all receive equal and impartial protection. (Cooley's Const. Lim.— 7th ed.—p. 509.) If the natural growth of the city required the extension of its limits in a reasonable manner,— which seems to have been the situation in the *Snell case, supra,*—so as to take in the first toll gate of appellant 12,156 feet west of the center of High street, whether the appellee could then take possession of the turnpike within its limits and compel the removal of the toll gate 160 rods beyond such limits would present an entirely different question. It is unnecessary, however, to decide that question in this case. Under section 12 and the other provisions of said Toll Road act of 1874, if under this annexation appellee is authorized to take possession of appellant's property in question, then by the same reasoning the city authorities could take possession of the entire turnpike by the annexation of a strip reaching to the limits of East St. Louis, or East St. Louis could

extend its territory in like manner, thus confiscating at once the entire turnpike and all the property of appellant.   In *Covington Turnpike Road Co.* v. *Sandford,* 164 U. S. 578, it was held that the courts have power to inquire whether the toll rates prescribed by the legislature are unjust and unreasonable and such as work a practical destruction of the rights of property, and if found to be so, to restrain their operation, because such legislation is not due process of law. Even if it be conceded that the provisions of said act of 1874 apply to appellant company, yet it must be held on the facts before us, both under that act and the charter of appellant as now amended, that the taking of this six miles of turnpike for public use without paying just compensation therefor is depriving appellant of its property without due process of law.

Can the action of appellee be justified as a proper exercise of police power?   Police power has been defined by this court as that inherent plenary power in the State which permits it to prohibit all things hurtful to the comfort, welfare and safety of society.   It "is co-extensive with self-protection, and is not inaptly termed 'the law of overruling necessity.' "   (*Town of Lake View* v. *Rose Hill Cemetery Co.* 70 Ill. 191.)   While the police power of the State can be used to promote the health, comfort, safety and welfare of the city and is very broad and far reaching, it is not without its restrictions.   (*Ritchie* v. *People,* 155 Ill. 98.) It must not conflict with the constitution, and must have some relation to and be adapted to the ends sought to be accomplished.   Rights of property will not be permitted to be invaded under the guise of police regulation.   (*Bailey* v. *People,* 190 Ill. 28.)   The legislature may determine when the exigency exists for the exercise of the police power, but it is for the courts to determine what are the subjects of police powers and what are reasonable regulations thereunder.   (*People* v. *Steele,* 231 Ill. 340; *Booth* v. *People,* 186 id. 43.)   Has appellee taken possession of this turnpike

to enable it to promote the health, comfort, safety or welfare of society?

Counsel for appellee insists that if, after this territory is annexed, appellant can still remain in possession of the turnpike and collect toll within the limits of the city it would be of great inconvenience to the public; that this court has recognized the principle that there cannot be at the same time within the same territory, exercising the same powers, two distinct municipal corporations; (*West Chicago Park Comrs.* v. *City of Chicago,* 152 Ill. 392;) that the building of sewers and laying of water pipes in the newly annexed territory, the laying out and paving of streets, and all other work necessary for the proper administration of municipal affairs, will be greatly interfered with if appellant's contention be upheld. While it would doubtless be of inconvenience to the public to be compelled to permit appellant to manage and control its turnpike road within the limits of the newly annexed territory and collect toll thereon, we are of the opinion that the fears of appellee as to the magnitude of the evils thus resulting are without substantial basis. The charter of the company provides for the construction of streets and roads across the turnpike, and inferentially for water pipes and sewers; and even if the charter did not, in terms, refer to any of these matters, the city would certainly have the necessary authority to do all this work under the police power, which appellee now contends not only permits it to do this class of work, but to take entire possession of the property to the total exclusion of appellee. Even where annexation of territory has plainly been made necessary by the growth of the city, it has been decided in other jurisdictions that the municipal authorities could not, on the ground of the safety, comfort and well being of society, take possession of a turnpike acting under a charter similar to the one here under consideration. (Elliott on Roads and Streets,—2d ed.—sec. 72, and cases cited; Cooley's Const. Lim.—7th ed.—p. 839, and cases cited.)

Nothing is disclosed on this record either as to the increase of population, topography of the ground, or any other reason in connection with the health, safety or comfort of the community, that will furnish any reasonable argument for taking the appellant's property, without paying therefor, through the present annexation of territory. This court, in *City of Chicago* v. *O'Brien,* 111 Ill. 532, speaking through Mr. Justice Scholfield, said (p. 536): "Even the police power, comprehensive as it is, has some limitations. It cannot be held to sanction the taking of private property for public use without making just compensation therefor, however essential this might be, for the time, to the public health, safety," etc.

Every person is bound to use his property so as not to interfere with the reasonable use and enjoyment of the property of others and not to interfere with the general welfare of the community in which he lives. This last duty may be regulated by the police power of the State. "Whatever restraints the legislature imposes upon the use and enjoyment of the property within the reason and principle of this duty the owner must submit to, and for any inconvenience or loss which he sustains thereby he is without remedy. It is a regulation and not a taking, an exercise of the police power and not of eminent domain. But the moment the legislature passes beyond mere regulation, and attempts to deprive the individual of his property, or of some substantial interest therein, under the pretense of regulation, then the act becomes one of eminent domain, and is subject to the obligations and limitations which attend an exercise of that power." (Lewis on Eminent Domain, séc. 6.) Under the police power the public welfare is promoted by regulating and restricting the use of property; under the exercise of the right of eminent domain the public welfare is promoted by the actual taking of the property for some particular use. We held in *Toledo, Peoria and Warsaw Railway Co.* v. *Deacon,* 63 Ill. 91, that the State has reserved to itself all

the police power necessary and proper to protect the life and property of the citizen. It is, however, the duty of the courts to inquire whether there is a real or substantial relation between the avowed objects of the law and the means devised therein for attaining those ends. (*Minnesota* v. *Barber,* 136 U. S. 313.) The requirement that compensation be made for public use imposes no restrictions upon the power of the State to make reasonable regulations to protect life and secure the safety of its people. (*Chicago, Burlington and Quincy Railroad Co.* v. *City of Chicago,* 166 U. S. 226.) In this last case the court, in speaking of the property necessarily taken from a railroad in building a street across its right of way, said (p. 256) : "While the city was bound to make compensation for that which was actually taken, it cannot be required to compensate the defendant for obeying lawful regulations enacted for the safety of the lives and property of the people." Whether especially directed by the city or by somebody acting under its sanction the legality of a police regulation depends upon the circumstances of each case and the character of the regulation, whether arbitrary or reasonable and whether reasonably designed to accomplish a legitimate purpose. (*Chicago, Burlington and Quincy Railroad Co.* v. *Drainage Comrs.* 200 U. S. 561.) And that case also held, that even to promote the public health, public morals or public safety, property could not be taken without compensation, for public use, under the police regulation, any more than it could when it bore no relation to such matters but only to the general welfare; that the foundations of the police power were the same in every case.

The cases of *Rogers Park Water Co.* v. *Fergus,* 178 Ill. 571, and *People* v. *Chicago Telephone Co.* 220 id. 238, cited by appellee, so far as they have any application to the question here under consideration, come clearly within the principle that the municipality had only undertaken a reason-

able regulation of the business of the corporations there in question.

No "overruling necessity," public or otherwise, has been shown for the taking of this toll-road property through the annexation of this long, narrow strip of territory. The means employed bear no real, substantial relation to public objects. They are manifestly arbitrary and unreasonable and beyond the necessities of the case. It is the duty of the court, therefore, to disregard mere forms and interfere for the protection of rights injuriously affected. (*Chicago, Burlington and Quincy Railroad Co.* v. *Drainage Comrs. supra.*) Under the pretense of regulation appellee has attempted to take from appellant essential rights and privileges conferred by its charter. Police regulations, to be upheld, must be such in fact, and not merely for the purpose of curtailing corporate rights and franchises. (Cooley's Const. Lim. (7th ed.) 838; *Ruhstrat* v. *People,* 185 Ill. 133.) Nothing is said in this opinion that is intended to question or decide the legality of said annexation.

The decree of the trial court perpetually enjoining appellant, its agents, officers, employees and servants, from maintaining upon any part of the turnpike embraced within the territory annexed to the city of Belleville in September, 1906, toll houses and gates, and from collecting tolls and charges from persons who drive or ride over that part of said turnpike in the annexed territory, must be held on this record to disregard constitutional guaranties in respect to the taking of private property without due process of law, and as not within the limits of the proper exercise of the police power of the State. The trial court should have dismissed the bill for want of equity.

For the reasons indicated in this opinion the decree must be reversed and the cause remanded to the circuit court, with directions to dismiss the bill for want of equity.

*Reversed and remanded, with directions.*