EAST ST. LOUIS & SUBURBAN RY. CO. v. CITY OF BELLEVILLE.

(District Court, E. D. Illinois. January 31, 1912.)

No. 382.

1. CONSTITUTIONAL LAW (§ 298*)—REGULATION OF FARES—DUE PROCESS OF LAW.

The state cannot by any of its agencies, legislative, executive, judicial, or municipal, so regulate the rates of fares to be charged by a street railroad company operating within the limits of a city as to withhold from the owners of the railroad just compensation for its use, as such

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

a regulation would deprive the owners of their property without due process of law.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 847; Dec. Dig. § 298.*]

2. CARRIERS (§ 12*)—RATES—REGULATION—REASONABLENESS.

Complainant operated a railroad within the city of Belleville, charging five cents fare within the city limits, whereupon the city arbitrarily extended its limits along the line of complainant's road through a strip of territory leading to another town not fully built up, and then attempted to extend the five-cent fare from the old limits of the city through the annexed strip. The railroad company's property was valued at $650,000. Its average yearly receipts under the regulation would be $122,313.86, and operating expenses $99,310.73, leaving a net return of $23,003.13, which, after deducting 3 per cent. for depreciation, would leave for distribution among stockholders $3,503.15. *Held*, that such regulation was invalid for unreasonableness.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 7–20; Dec. Dig. § 12.*]

In Equity. Bill by the East St. Louis & Suburban Railway Company against the City of Belleville. Decree for complainant.

M. W. Schaefer, C. L. McKechan, and J. S. Clark, for complainant. A. H. Baer and J. M. Hamill, for defendant.

WRIGHT, District Judge. Succinctly stated the point for determination in this case is whether a five-cent fare extended from the old limits of the city of Belleville along the line of complainant's road through the annexed strip of territory to Edgemont, will afford to the complainant a just and reasonable return for the use of its property. By his findings and conclusions the master has determined the above question in the affirmative, and has reported his recommendations to the court that complainant's bill be dismissed for want of equity, to which report and conclusions the complainant has excepted. I am unable to agree with the conclusions of the master, and shall briefly state my reasons for the determination I have reached.

[1] The rule of the law by which we should be guided in a case like this may be stated thus: The state cannot by any of its agencies, legislative, executive, judicial, or municipal, withhold from owners of property just compensation for its use. That would be a deprivation of property without due process of law. The law thus briefly stated is so elementary that authorities are unnecessary to be cited.

[2] In a case like this, it is first necessary to ascertain the present going value of the property involved in order to have a proper basis upon which to compute the value of its use. The master by his findings has endeavored to do this, and it is upon such findings that exceptions are elaborately argued by counsel for both sides. I have examined and considered the whole evidence upon this point in the light of the master's findings and the very able arguments of counsel for both parties, and the printed briefs and arguments filed in the case, and have reached a conclusion as to the present going value of the property different from the master. I do not deem it necessary to go into the various details by which I reach this conclusion, be-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cause all the evidence is in the record and different minds might reach a greater valuation and others a less valuation than I have done. It is a question of fact to be determined upon a fair and impartial consideration of the evidence as a whole, disregarding none, rejecting none, but endeavoring to reconcile and give to every part of it the weight which it is fairly entitled to receive, and also without going outside of the evidence to hunt up supposititious situations having no support upon the evidence in the record. After such a consideration of the evidence, I am convinced the master has reached a less valuation than that warranted and required by the evidence, and while I have not determined, and it is not my intention to determine, the precise valuation to be adopted, inasmuch as that is unnecessary, having no power or authority to fix rates, I am satisfied that a fair valuation of the property concerned in this case should not be less than $650,-000, and I may say that I would be better satisfied with a somewhat larger valuation.

Having reached a conclusion upon the present going valuation of the property concerned, we now give attention to the earnings from the operation of the property concerned under the five-cent fare regulation imposed by the ordinance in question. While Mr. Ludlam's evidence as contained in Exhibit 26 may or may not be subject to some doubt as to certain items being strictly operating expenses, or something else, they have gone into the record as evidence of operating expenses, and so far as I have discovered are not disputed by other expert testimony. Under all the circumstances of this case, I do not think it consistent with the fair justice of the case to refuse to apply to the consideration of the evidence the rule that every fair intendment may be indulged from facts directly or actually proved. I believe in fairness this statement of the witness Ludlam should be accepted as true, inasmuch as it seems undisputed, unless we shall enter into it and discredit it inherently, and this I feel would be an injustice unwarranted by all the circumstances of the case. Accepting, therefore, this statement as true, we have average yearly receipts from the operation of the property concerned, under the regulation for a five-cent fare, of $122,313.86, and the operating expenses $99,310.73, leaving a net return of $23,003.13, for depreciation and a fair return to the complainant on the value of its property. According to the evidence, depreciation will vary from 2½ to 5 per cent. If 3 per cent. is allowed here for depreciation, and it seems certain the evidence will warrant that or more, we have $3,503.15, remaining to be applied as an annual return upon property valued at $650,000. If the court is correct in this conclusion, and I am satisfied it is justified in reaching it, is any argument needed to prove that the state, by its municipality, by its ordinance imposing the regulation of a five-cent fare into the annexed strip of territory, is withholding from the complainant the owner of this private property, just compensation for its use, and thereby depriving it of its property without due process of law? Surely no such argument is needful, for the very statement of it proves the case beyond the possibility of refutation.

I ought to say in conclusion that if the natural growth of the city of Belleville required the extension of its limits in a reasonable man-

ner, no doubt exists in the mind of the court that a five-cent fare, as is usual in almost every city, so as to become, as was said in the argument, conventional, would have been sufficient because of such natural growth in business and population. No such natural growth is apparent in this case, and while it is conceded that the city had the naked legal right to annex this long, narrow strip of territory, containing complainant's road, still there was no overruling necessity, public or otherwise, for such annexation, ·and as was said by the Supreme Court of Illinois in City of Belleville v. St. Clair Turnpike Company, 234 Ill. 428, 84 N. E. 1049, 17 L. R. A. (N. S.) 1071:

"The means employed bear no real substantial relations to public objects. They are manifestly arbitrary and unreasonable beyond the necessities of the case. It is the duty of the court, therefore, to disregard mere forms and interfere for the protection of rights injuriously affected. Under the pretense of regulation appellee attempted to take from appellant essential rights and privileges conferred by its charter."

I have thus quoted from the Supreme Court of Illinois to show that this annexation had no real or substantial relation to public objects in its opinion. If that is true, as that court has said, then the public, the citizens of Belleville, had no great interest in the extension of the five-cent fare of the railroad into the Edgemont strip, and it was not for their benefit it was made, but more particularly would the outside traffic be benefited. This aspect of the case is alluded to at the close of these reasons, not as an excuse for the conclusion the court has already given, but as a further duty of the court in addition as the court believes, to the natural equities of the case, to disregard mere forms and interfere for the protection of rights injuriously affected.

The exceptions of the complainant to the findings and conclusions of the master will be sustained, and a general finding of the equities of the cause may be entered for the complainant, and a decree may be prepared for the complainant as prayed in the bill of complaint.