## SKANEATELES WATER WORKS COMPANY *v.* SKANEATELES.

**ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.**

No 134.　Argued January 24, 27, 1902.—Decided March 3, 1902.

On April 5, 1887, the village of Skaneateles granted a franchise to the water-works company to maintain and operate within the village a system of waterworks for furnishing pure and wholesome water to the village and its inhabitants, under which the company constructed its works, and on February 1, 1891, contracted to supply water to the village and its inhabitants for the period of five years. At the expiration of the term of this contract some differences arose about the terms of its continuation, which resulted in the construction of an independent system of waterworks by the village authorities. In an action brought by the water company to restrain the village authorities from proceeding with the construction of that system or any other system for the village, it is held by the New York court (1) that the village was not required to institute proceedings to condemn the property of the plaintiff before commencing the construction of a waterworks system for the use of the village; (2) that the water-works company under the contract did not acquire the exclusive right to furnish the village with water; (3) that subsequently to the termination of the contract no contractual relations existed between the water company and the village: *Held,*

(1) That the power of this court to review the judgment of the New York Court of Appeals is limited to a consideration of whether any right of the plaintiff's protected by the Federal Constitution has been denied;

(2) That the water company, in applying to the village and filing its certificate with the Secretary of State under the act of 1873, acquired no contract right, express or implied, to any exclusive privilege of using the streets of the village for supplying it with water;

(3) That by virtue of its incorporation it secured simply the right to be a corporation and the authority to lay its water pipes in any of the streets and avenues or public streets of the village of Skaneateles;

(4) That when the contract for five years had expired there was nothing in the state legislation upon which to base an implied contract;

(5) That the decrease in the value of the property of the waterworks company, caused by the exercise by the village of its right to build and operate its own plant, furnishes no foundation for the plaintiff's claim.

This is a writ of error to the Supreme Court of the State of New York, the record having been remitted to that court from the Court of Appeals after the hearing of an appeal to the latter court and an affirmance by it of the judgment appealed from. 161 N. Y. 154.

The action was brought by the water company to restrain the village of Skaneateles and the individual defendants, its officers, from proceeding further with the construction of a waterworks system, or from doing any thing in furtherance of the construction or operation of any system of waterworks for that village. The plaintiff claimed that the village ordinance under which the proposed action on the part of the village was taken was void as impairing the obligation of a contract between plaintiff and the village; also, that its action if continued would result in the taking of plaintiff's property without due process of law; that the action of the defendant, if permitted, would result in the taking of private property for public use without compensation; and that such legislation denied to plaintiff the equal protection of the laws.

The defendants answered denying the contentions of plaintiff, and the case was referred to a referee for trial, who, after hearing the parties, reported that the defendants were entitled to judgment, dismissing the complaint upon the merits, with costs, and judgment was thereupon entered which was affirmed by the appellate division of the Supreme Court of the State and upon appeal by the Court of Appeals.

As matters of fact the referee in his report found that the plaintiff was a domestic corporation organized under the act of 1873, chapter 737, and the several acts amendatory thereof; that the village of Skaneateles was a municipal corporation and the individual defendants were respectively the president, water commissioners and trustees of the village. On April 5, 1887, the village granted a franchise to the plaintiff to maintain and operate within the village of Skaneateles a system of waterworks for furnishing the village and its inhabitants pure and wholesome water upon the terms and conditions stated in the franchise. The plaintiff constructed the waterworks under this franchise and completed it about the year 1889 and put the same in operation; that the system was a complete and adequate one, no complaint having been made that the water furnished by the plaintiff was not pure and wholesome, or that it had been inadequate for the purposes for which the system was erected. Prior to this time the village of Skaneateles was not supplied with water by any company or corporation, nor did it possess any system of its own; that since its incorporation, and for the purpose of carrying on its works, the plaintiff had incumbered its property by mortgages to secure the payment of bonds issued by it, which bonds were outstanding at the time of the trial. After the erection and completion of the waterworks and on February 1, 1891, the plaintiff and defendants entered into a contract for the supply of water and the erection of hydrants and for the payment of certain compensation therefor by the defendants; that such contract was limited by its terms to the period of five years from February 1, 1891, and that it has not been renewed since the time of its expiration on February 1, 1896; that after such time, without any proceeding to vacate or annul the franchise of the plaintiff, or to dissolve the corporation, the defendant Leslie, as president of the village, appointed some of the other defendants to be water commissioners of the village, having in contemplation the purpose of constructing for said village a waterworks system of its own; that the persons so appointed commissioners entered upon the performance of their duties, called a meeting of the electors of the village, who voted in favor of municipal

ownership of the waterworks, and after such election the water commissioners issued or caused to be issued bonds of the village to the amount of $30,000, which they sold for the purpose of obtaining money to construct a waterworks system of its own; that the board of water commissioners of the village have entered into a contract for the construction of waterworks for said village, and have expended thereon about the sum of $24,000, and the works are substantially completed; that all of the proceedings were taken without instituting any proceeding to condemn the property of the plaintiff herein, although the plaintiff offered to participate in a proceeding looking towards the condemnation of its property; that the works of the plaintiff were constructed at large expense and its property rights and franchise mortgaged to secure its bonds which had been issued, and the income of the plaintiff from the operation of its plant had been insufficient to meet its outgoing expenses, and will be insufficient to meet its outgoing expenses when it shall cease to furnish water to the village of Skaneateles.

As conclusions of law the referee held:

(1) That the village of Skaneateles was not required to institute proceedings to condemn the property of the plaintiff before commencing the construction of a waterworks system for the use of the village.

(2) That the consent of the village of Skaneateles to the organization of the plaintiff as a waterworks company, and the making of a contract by the village of Skaneateles with the plaintiff for the supply of pure and wholesome water, did not vest in plaintiff the exclusive right to furnish said village with water, or prevent the village from granting to another corporation the right to supply water within the said village, or the village from constructing and maintaining a waterworks system to supply itself with water.

(3) That subsequently to February 1, 1896, no contractual relations existed between the plaintiff and the village of Skaneateles, and the village was not under legal obligation to enter into any contract with the plaintiff after that date, or to continue to take water from the plaintiff; but was entitled to construct and maintain a waterworks system of its own.

(4) That the defendants were entitled to judgment dismissing the complaint upon the merits with costs, and judgment was ordered accordingly.

Though not, perhaps, material upon the legal rights of the parties, yet it is seen from correspondence found in the record that prior to the expiration of the contract in February, 1896, the company gave notice to the village that it intended to increase its rents for hydrants, etc., to fifty dollars, which sum was ten dollars per hydrant more than it was entitled to under the franchise granted it, and twenty dollars more than the sum named in the expiring contract. The village authorities refused to pay the increase, and the water company, on learning it had under its franchise the right to charge but forty dollars per hydrant, reduced its demand, but the parties failed to agree, and the contract expired. After its expiration the company notified the village that the hydrants had been closed and that there must be no interference with them, even in case of fire. Both parties became somewhat excited, is would seem, and it resulted in the village taking proceedings under chapter 181 of the laws of 1875, and its amendments for erecting and operating waterworks of its own.

*Mr. Charles A. Hawley* for plaintiff in error. *Mr. George Barrow* was on his brief.

*Mr. M. F. Dillon* and *Mr. William G. Tracy* for defendants in error.

MR. JUSTICE PECKHAM, after making the above statement of facts, delivered the opinion of the court.

The power of this court to review the judgment of the New York Court of Appeals is limited to a consideration of the question whether any right of the plaintiff's protected by the Federal Constitution has been denied by the judgment. Whether the plaintiff is entitled to relief under the facts disclosed in the record upon general principles of equitable jurisdiction, is not a matter for us to inquire into, so long as the question does not involve the constitutional rights of the plaintiff.

Opinion of the Court.

The claim is made that the ordinance adopted by the authorities of the village of Skaneateles in 1896, providing in substance for the erection and operation of a water system by the village, which ordinance was passed pursuant to an authority of the legislature under the act, chapter 181 of the laws of 1875, and amendments, (giving authority to cities and villages to build their own waterworks,) impaired the obligation of the contract existing between the village and the company.   The contract to which reference is made is not the one which was entered into in 1891 between these parties for the term of five years, because that contract was fully carried out and had expired by its own limitation in February, 1896, but it is the contract which the plaintiff in error claims was implied by reason of its organization and incorporation in 1887, in pursuance of an application made to, and with the consent of, the village authorities, and under the provisions of chapter 737 of the laws of New York of 1873, and the acts amendatory thereof.   It is said the village at the time of plaintiff's incorporation had the election to do the work itself under the above act of 1875, or to confer upon a private company like the plaintiff, under the act of 1873, the right to do it, and when with these two different methods for obtaining a supply of water the village chose that which called for a supply by a private company, it impliedly contracted that it would not itself thereafter take the other method for obtaining such supply, unless it bought the plant of the company or condemned it under the provisions of the act of 1875.   This, it is said, was implied in the grant made by the village.   Sections 1, 2, 3, 4 and 5 of the act of 1873, under which the plaintiff was incorporated, are set forth in the margin.[1].

---

[1] CHAP. 737, LAWS OF 1873.

SEC. 1. Any number of persons not less than seven may hereafter organize in any town or village of this State a waterworks company, under the provisions of this act.

SEC. 2. Whenever any persons to the number of seven or more shall organize for the purpose of forming a waterworks company in any of the towns or villages in this State, they shall present to the town or village authorities an application, setting forth the persons who propose to form said company, the proposed capital stock thereof, the proposed number and character of the shares of such capital stock, and the name or names of the streams, ponds,

Under the act of 1875, chap. 181, the village was authorized to erect and operate its own works. Provision was made in the act in detail for the organization of a board of water commissioners and the building of waterworks, the mode of paying for the same, and other matters connected with the supply of water. That part of the twenty-second section of the act, in

---

springs, lakes or other sources and their locations, from which water is to be supplied. Such applications shall be signed by the persons who propose to form said company, and shall contain a request that the said town or village authorities shall consider the application of said company to supply said town or village of this State, or the inhabitants thereof, with pure and wholesome water. Upon the presentation of such application, the authorities of any town or village, which authorities are for the purposes of this act defined to consist of incorporated villages and towns, the board of trustees and supervisor, and for all other towns, the supervisor, justices of the peace, town clerk and commissioner of highways. Said authorities shall within thirty days of the presentation of said application determine by a vote of a majority of the authorities of said town or village, whether said application shall be granted; and the authorities of any town or village in this State are hereby authorized and empowered to make such determination, and when the same shall be made, to sign a certificate to that effect, and immediately transmit the same to the person making such application or either of them. Duplicate certificates of such determination shall be filed in the office of the clerk of said town or village, and in the office of the county clerk of the county in which said town or village granting such application shall be situated. The persons named in such application shall thereupon meet and organize as a waterworks company under such corporate name as they may select. They shall file in the office of the secretary of State a certificate of such organization. Said certificate shall contain the name of the corporation, the names of the members of said corporation and their residences, the amount of capital stock, the location of the office of said company. Such certificate shall be subscribed and sworn to by the president of said corporation, and shall be attested by the secretary thereof. Upon the filing of said certificate said waterworks company shall be known and deemed a body corporate, and shall be capable of suing and being sued by the corporate name which they shall have selected, in any of the courts of this State. The capital stock of said company shall be paid in the manner and within the time provided by the "Act to authorize the formation of corporations for manufacturing, mechanical or chemical purposes," passed February seventeenth, eighteen hundred and forty-eight, and the several amendments thereto, and the stockholders of said companies shall be personally liable for the debts of said companies in the same manner and to the same extent as is provided by said act and the amendments thereto.

Opinion of the Court.

regard to the taking of the property of a private company, is set forth in the margin.[1]

Pursuant to the provisions of the act of 1873, certain persons on July 5, 1887, apply to the village authorities for permission to organize a water company to supply the village with pure and wholesome water, and on that day the authorities granted the request. On August 1, 1887, a certificate was duly filed in the office of the Secretary of State at Albany, by which the corporation was formed under the name of The Skaneateles Waterworks Company. Subsequently to the incorporation of

---

SEC. 3. Said corporation shall have power to take and hold real estate for the purpose of their corporation, and may have, hold and occupy any of the waters of this State; provided, however, that nothing herein contained shall be deemed to infringe upon any private right which shall not have been the subject of an agreement and lease or purchase by said corporation. Provided, that said company shall have no power to take or use water from any of the canals of this State or any canal reservoirs as feeders or any streams which have been taken by the State for the purpose of supplying the canals with waters.

SEC. 4. Any corporation organized under the provisions of this act may, and they are hereby authorized and empowered, to lay their water pipes in any streets or avenues or public places, in any streets or avenues of an adjoining town or village, to the town or village where their application shall have been granted.

SEC. 5. Said corporations are authorized and empowered to supply the authorities or inhabitants of any town or village where they may have organized, with pure and wholesome water, at such rates and cost to consumers as they shall agree upon.

[1] PART OF SEC. 22, CHAP. 181, LAWS OF 1875.

SEC. 22. "Whenever any corporation shall have been organized under the laws of this State for the purpose of supplying the inhabitants of any village with water, and it shall become or be deemed necessary by the board of water commissioners herein authorized to be created, that the rights, privileges, grants and properties of such corporation shall be required for any of the purposes of this act, the commissioners herein authorized to be created shall have the power, and it shall be their duty, to make, or cause to be made, a thorough examination of the works, rights, privileges and properties owned or held by such corporations, or any of them, and if such commissioners shall determine that said works, rights, privileges and properties are necessary for the purposes of this act, they shall have the right to make application to the Supreme Court. . . ." The section then provides for taking the property by condemnation.

the plaintiff it built the waterworks and entered into a contract with the village authorities to supply water to the village for five years from February 1, 1891.

It would seem to be clear, under the decisions of this court, that the plaintiff in applying to the village and filing its certificate with the Secretary of State under the act of 1873 acquired no contract right, expressed or implied, to any exclusive privilege of using the streets of the village for supplying it with water. *Charles River Bridge Company* v. *Warren Bridge Company*, 11 Pet. 420; *Long Island Water Supply Company* v. *Brooklyn*, 166 U. S. 685, 696; *Walla Walla City* v. *Walla Walla Water Company*, 172 U. S. 1, 13. The Court of Appeals of New York held to the same effect in regard to a provision in the charter of Syracuse relating to the rights of a water company, the provision being similar to the charter here involved. *Syracuse Water Company* v. *Syracuse City*, 116 N. Y. 167, decided in 1889; also *Matter of City of Brooklyn*, 143 N. Y. 596, affirmed in this court, 166 U. S. *supra*. Indeed, this proposition is conceded by counsel for the plaintiff, and it admits that the village, notwithstanding its grant to the plaintiff, possessed the power to grant to any other individual company the same kind of privilege it had already granted to plaintiff. But it denies the right of the village to avail itself of the authority to itself build and operate the works, given under the act of 1875, unless the plaintiff's plant be taken by purchase or condemnation.

Having before it the above act of 1873, amended in 1877, the Court of Appeals, in *People ex 'rel. &c.* v. *Forrest and others*, 97 N. Y. 97, 100, decided in 1884, said that: "The State authorized the formation of waterworks companies in its towns and villages, (Laws of 1877, chap. 171,) but it does not require one so organized to supply water to the town or village, nor does it require the town or village to take its supply of water from the company so formed."

It is true that by chapter 566 of the laws of 1890 it was provided that the water companies "shall supply the authorities or any of the inhabitants of any city, town or village through which the conduits or mains of such corporation may pass, with

pure and wholesome water at reasonable rates and cost;" and the act provided that contracts might be made therefor. But there was no provision making it incumbent upon the municipal authorities to take water from any such company.

By virtue of its incorporation under this act of 1873 the plaintiff secured simply the right to be a corporation and the authority to lay its water pipes in any of the streets and avenues or public streets of the village of Skaneateles. The village, however, as stated, was under no obligation to take water from the company. That was a matter for subsequent contract between the parties. Admitting that in every grant there is an implication that the grantor will do nothing to detract from the full and complete operation of the grant itself, we cannot find any implication that, after the termination of the contract the plaintiff and defendant were empowered to make, there should be no right in the defendant to build its own system of waterworks under the statute of 1875, unless it purchased or condemned the property of the plaintiff.

There is no implied contract in an ordinary grant of a franchise, such as this, that the grantor will never do any act by which the value of the franchise granted may in the future be reduced. Such a contract would be altogether too far reaching and important in its possible consequences in the way of limitation of the powers of a municipality, even in matters not immediately connected with water, to be left to implication. We think none such arises from the facts detailed.

It is not amiss to here recall the situation at the time plaintiff became incorporated, in 1887, under the act of 1873. That act provided for the organization and incorporation of water companies which might furnish water to cities, villages and towns of the State. There was also the act of 1875 (chapter 181) and its amendments, granting to the village authorities the right to erect and operate a water system of their own. There was the further statutory provision, (chapter 129 of the Laws of 1879, relating to the municipality, and chapter 422 of the Laws of 1885, relating to a water company,) that the contracts to be entered into between the water companies and the municipal authorities should not extend beyond five years, un-

less there was a vote of the electors authorizing a contract for a longer period, but in no case longer than thirty years. Now while the parties are prohibited from contracting for more than five years without a vote of the electors, which was not taken, how can it be said that when they contracted only for the time permitted by the legislature, there was nevertheless an implied contract that the village would never avail itself of the right provided by statute, without purchasing or condemning the property of the plaintiff? No such condition is stated in any statute. We cannot see any solid foundation for the claim that there was a final and conclusive election of methods by the village, out of which sprang the implied contract contended for, when the legislature at that very time prohibited a contract for more than five years. It would seem in the nature of things that the election of methods was for no longer a time than the law permitted a contract to be made under the method chosen by the village. After the expiration of that time we cannot see why the parties were not in the same condition as to their respective rights that they were in before the contract for the five years was made. Otherwise, we have the anomalous condition that the village may grant unconditionally, the franchise to supply it with water, to another private company, while ceasing and refusing to take from the old company, and yet it cannot erect its own water system, (unless it purchases or condemns the plant of the plaintiff,) because it chose to enter into a contract with plaintiff for a supply of water by it for five years, although the contract has expired by its own limitation and the parties are under no legal obligation to renew it. We can appreciate the argument that the village had no right to build and use its own plant during the running of the five years' contract, but we fail to see the force of the claim that, on account of once making a contract with the plaintiff for five years, the village irrevocably bound itself by an implied contract never to build its own plant without taking by condemnation the property of the plaintiff if the parties could not agree on terms of purchase. We cannot see the logic of such contention.

The very fact that the taking of the plant of a private exist-

ing company was not made a condition for the exercise of the authority to build granted the village by the act of 1875, shows there was no implied contract to take such property.  The right to build was specifically given to the village under the act of 1875, whether any private company existed or not, and that right to build was nowhere in the statute conditional upon a taking by the village of the plant of the private company.  The act recognized the fact that there might be an existing private company, and the twenty-second section gave the village authority to take it, but did not compel it.  It, therefore, authorized the village to build and operate its works without taking the plant of the private company.  Both these acts were in existence when the plaintiff was incorporated under the act of 1873, and it took the chance of the village thereafter availing itself of the act of 1875 to build and operate, unconditionally, its own plant.

When the contract for the five years had expired we look in vain for anything in either of the statutes of 1873 or 1875 upon which to base the implied contract contended for.  The court below, after careful consideration of the statute of 1875, came to the conclusion that there was nothing in the language of the twenty-second or any other section thereof compelling the village to purchase or condemn the plant of the company, and that no contract could be implied therefrom.  Chief Judge Parker, in his opinion in this case, (161 N. Y. 154, at page 162,) says : 

"On the other hand, the appellant urges that the statute authorizing villages to supply themselves with water, and permitting the acquisition of the works of any private corporation that may be supplying such municipalities with water, also makes it the duty of the water commissioners to acquire the property of the existing corporation or corporations.  But after a very careful examination of the statute it seems to us very clear that this is not so.  It is probable that the legislature mistakenly assumed that such authorities would not act unjustly or oppressively, but would recognize the property rights of others.  Be that as it may, the right to determine whether the property of an existing waterworks corporation should be taken

or not is clearly submitted to the determination of the local authorities. The refusal of the defendant, therefore, to acquire the plaintiff's property by proceedings *in invitum* does not tend to support the plaintiff's claim for an injunction. The defendant has done precisely what the statute authorizes, and all that remains for the court to determine is whether the act was within the legislative power, or void because in contravention of the organic law."

The judge then proceeded to discuss that question, and held that the action of the village was legal. We concur in this view. The language too plainly leaves it to the discretion and judgment of the water commissioners, to permit of any other construction. Not being bound by the statute to take the property of the plaintiff as a condition of building its own plant, there is, as we have said, no implication of a contract to do that which the statute itself does not direct.

Reference was made on the argument to two Pennsylvania cases, decided by the Supreme Court of that State. They are *White* v. *City of Meadville*, 177 Penn. St. 643, and *Metzger* v. *Beaver Falls &c.*, 178 Penn. St. 1. They decide what is the proper construction to be given certain statutes of that State relating to municipal corporations, and to water companies formed to supply them with water. The actions were brought by taxpayers of the municipalities to restrain the latter from erecting works of their own to supply water. The court held that under the powers given to the municipalities by those statutes, they had not the right to erect such works unless they took the plant of the water companies then operating such plant. They did not hold there was any implied contract on the part of the municipalities that they would so take the plant, or that to operate works of their own without doing so would be a taking of the property without due process of law or without making compensation, or that it would be a denial of the equal protection of the laws. The cases were maintained on equitable principles and in favor of taxpayers who were complainants, and there was no question of contract between the city and the water company upon the basis of which the actions were permitted to stand. It was a simple question of the powers granted to the

parties by the different statutes. The court said that although the city was not bound to become the owner of the works, it had no power to destroy their value by duplicating them at the expense of the taxpayers. A taxpayer was the plaintiff. The court decided no Federal question in either case. The statutes of New York are somewhat different, and the state court has come to the conclusion that under them the village was not bound to take the plant of the plaintiff. We agree in the view that there was no implied contract to take the property of plaintiff, even though the village should subsequently to the expiration of the written contract erect its own water system.

It is also plain that as there was no contract, such as is claimed by the plaintiff, the action of the village has not resulted in the taking of any of the property of the plaintiff without due process of law or without compensation. It has not taken any of the property of the plaintiff in any aspect of the case. Its action may have seriously impaired the value of the plaintiff's property, but it has taken none of it, and such decrease in value, caused by the village exercising its right to build and operate its own plant, furnishes, under the facts in this case, no foundation for the plaintiff's claim. *Lehigh Water Company* v. *Easton*, 121 U. S. 388, 390.

In *Pumpelly* v. *Green Bay Company*, 13 Wall. 466, the land of the plaintiff had been overflowed by water under a claim of right under a statute, and it was held that such continuous overflow and user amounted to a taking of the plaintiff's property.

This is not such a case. The property of the plaintiff remains wholly untouched. Its value has decreased because the village no longer takes water from it, and the inhabitants will probably also take their supply from the village works, but the plaintiff's property has not been taken, as that term is understood in constitutional law. What the village ought to do in the moral aspect of the case is, of course, not a question for us to determine.

The Court of Appeals has held in this case that the provisions in the statute for the taxation of the property of the company in common with other owners of property to pay the obliga-

tions incurred in the construction of the works by the village, and all discriminating taxation of the patrons of the company are invalid. See also *Warsaw Waterworks Company* v. *Village of Warsaw*, 161 N. Y. 176. The plaintiff is, therefore, freed from the obligations imposed by those provisions.

The views above expressed show that there was no such contract as claimed by the plaintiff, and consequently no impairment of the obligations of any contract, and there has been no taking of plaintiff's property, nor has it been denied by the State the equal protection of the laws. The judgment of the Court of Appeals of New York is right, and must, therefore, be

*Affirmed.*