259 P.2d 561

## CITY OF TUCSON v. POLAR WATER CO.

### No. 5607.

Supreme Court of Arizona.

July 13, 1953.

Harry L. Buchanan, City Atty., J. Luther Davis, Asst. City Atty., Tucson, for appellant.

Knapp, Boyle, Bilby & Thompson, and Arthur Henderson, Tucson, for appellee.

Wm. C. Eliot, City Atty., Laurence H. Whitlow (former City Atty.), George T. Fike, Asst. City Atty., Arthur B. Parsons, Jr., Asst. City Atty., Phoenix, John W. Corbin, City Atty., Glendale, Jos. C. Furst and Lin H. Orme, Phoenix, of counsel, Clifford R. McFall, Tucson, A. B. Spector, Phoenix, amici curiae.

PHELPS, Justice.

This action was instituted by the Polar Water Company, a limited partnership, to enjoin the city of Tucson, a home rule city, from extending its water service into Blenman Addition, which a short time previously had been annexed to the city of Tucson, and to enjoin it from serving the customers of plaintiff-appellee. Plaintiff and its predecessors have been engaged as a public utility in serving water for domestic purposes to residents within the Blenman Addition since 1937. This subdivision was annexed to the city of Tucson in 1947. Plaintiff was operating under a certificate of convenience and necessity issued by the Corporation Commission and acquired a franchise or license from the board of supervisors of Pima county to use the roads and streets in such unincorporated subdivision for laying its water mains, pipes, etc. The action was instituted in 1951 and the complaint contains two counts. The first count is based upon the provisions of section 16-604, A.C.A.1939, infra. The second count is based upon the theory of an unlawful taking or damaging of the property of plaintiff by illegal competition with it, and that it amounted to a taking of its property without due process.

Counsel for plaintiff in his original brief stated that the weight of authority was against his position on the second count but

in a reply brief to amici curiae briefs, he reasserts his claim alleged under Count II upon the theory that it is the declared policy of the state of Arizona that public utilities shall enjoy a regulated monopoly in the conduct of their business and the legislature in enacting chapter 77, Session Laws of 1933, was reaffirming that policy. The city in its answer denied in part and admitted in part the allegations of the complaint and alleged that plaintiff was serving water to residents both inside and outside the corporate limits of Tucson. The cause was tried to the court and judgment was entered in favor of the plaintiff enjoining the city of Tucson from furnishing water to its customers in Blenman Addition. The city has appealed to this court from that judgment and from the order denying its motion for a new trial.

The material facts are not in dispute. There is no question but that the plaintiff was furnishing water to the residents of Blenman Addition under a certificate of convenience and necessity issued by the Corporation Commission and that it and its predecessors had a franchise or license from Pima county to lay its pipes and mains within the roads and highways in that subdivision prior to its annexation to the city of Tucson. It is also admitted that soon after the annexation of Blenman Addition to the city of Tucson, the city began to extend its water system into that area and at the time this action was instituted, had connected said water system with over 60 of the residents of that area who had made application for city water service and had therefore discontinued the use of service from plaintiff. The city admitted that it had connected its water service with plaintiff's customers and intended to continue to extend such service in that area and to make connections with other customers of plaintiff upon application being made by them for said service.

During the trial of the cause counsel for plaintiff conceded that the city of Tucson had the right to extend its water service into the area for purposes other than for domestic use and that it had the right to occupy the streets and roads located in that subdivision for that purpose and that the franchise or license granted by Pima county to plaintiff was not exclusive.

We will hereinafter state the questions involved in this litigation and in order that we may have a clear picture of such questions it is necessary to set forth herein the constitutional and statutory provisions bearing thereupon.

Article 13, § 5, of the Arizona Constitution provides:

"Every municipal corporation within this state shall have the right to engage in any business or enterprise which may be engaged in by a person, firm, or corporation by virtue of a franchise from said municipal corporation."

130

In the same year the constitution was adopted it was amended by referendum measure approved at the general election of November 5, 1912 which is now article 2, § 34 of the constitution. It provides:

"The state of Arizona and each municipal corporation within the state of Arizona shall have the right to engage in industrial pursuits."

Both of these provisions of the constitution have been declared by this court to be not self-executing, i. e., before they could become operative they had to be implemented by legislative enactment.

So far as it is necessary to incorporate herein the legislature in 1921 enacted chapter 31 which was intended to implement article 13, § 5, supra. It provides among other things for municipalities to engage in the business of operating a public utility within or without the corporate limits including the furnishing of light, gas plants, water, transportation, etc., and gave to such municipalities the right of eminent domain either within or without the corporate limits but provided that before the city could enter into such business, if it encroached upon an area then being served by a public service corporation, it must obtain a certificate of convenience and necessity from the Corporation Commission.

This act was amended by chapter 77 of the Session Laws of 1933 which deleted therefrom the requirement that the city must acquire a certificate of convenience and necessity from the Corporation Commission but incorporated in lieu thereof section 3 of the act, now appearing as section 16–604, A.C.A.1939, which forms the basis of this litigation. It reads:

"Where a municipal corporation and the citizens thereof are being served under an existing franchise by any public utility, such municipal corporation, before constructing, purchasing, acquiring or leasing, in whole or in part, any plant or property devoted to the business of or services rendered by such public utility, shall first purchase and take over the property and plant of such public utility. The said property and plant shall become the property of the municipal corporation in the event of and upon the payment by the municipal corporation of the fair valuation thereof, within eighteen (18) months after the determination of such valuation in the manner hereinafter provided. The fair valuation of such public utility shall be the equivalent of the compensation to be paid for the taking of private property for public use under the provisions of chapter 23, Revised Code of 1928 (§§ 27–901—27–121), and such amount shall be determined by one of the following methods:

"1. By agreement between the municipal corporation and the public utility;

"2. By arbitrators to be chosen in such manner as may be agreed upon at the time by the municipal corporation and the public utility; or,

"3. By a court of competent jurisdiction, sitting to ascertain the compensation for

the taking of private property for public use under the provisions of chapter 23, Revised Code of 1928 (§§ 27–901—27–921).

"Both the municipal corporation and the public utility shall have full rights of appeal, as provided by said chapter 23 * *."

The constitution of the state of Arizona, article 15, § 2 thereof, further provides that:

"All corporations *other than municipal* engaged in carrying persons or property for hire; or in furnishing gas, oil, or electricity for light, fuel, or power; or in furnishing water for irrigation, fire protection, or other public purposes; or in furnishing, for profit, hot or cold air or steam for heating or cooling purposes; or in transmitting messages or furnishing public telegraph or telephone service, and all corporations *other than municipal*, operating as common carriers, shall be deemed public service corporations." (Emphasis supplied.)

Sections 3, 4 and 5 of article 15 give the Corporation Commission jurisdiction over public service corporations and authorize it to fix reasonable rates, etc., and to establish rules and regulations relative to the conduct of the business of such public service corporation.

Article 13, § 2 of the constitution of Arizona provides insofar as here material:

"Any city containing, now or hereafter, a population of more than three thousand five hundred may frame a charter for its own government consistent with, and subject to, the constitution and the laws of the state, in the following manner: * * *."

The remainder of section 2 thereof sets up the procedure by which the charter is finally adopted. The legislature thereafter enacted chapter 11 § 4, Session Laws of 1912, now section 16–303, A.C.A.1939, which reads as follows:

"When the charter of such city has been framed, adopted, and approved according to the provisions of this article, and any provisions of such charter are in conflict with any law relating to cities containing a population of more than three thousand five hundred (3,-500) inhabitants, in force at the time of the adoption and approval of such charter, the provisions of such charter shall prevail notwithstanding such conflict, and shall operate as a repeal or suspension of such law to the extent of such conflict, and such law shall not thereafter be operative as to such conflict; provided that such charter shall be consistent with and subject to the state constitution, and not in conflict with the constitution and laws relating to the exercise of the initiative and referendum and *other general laws of the state not relating to cities*." (Emphasis supplied.)

The defendant city contends here (1) that section 16–604, supra, has no applica-

tion to the facts in this case but if it has it is inoperative as against a home rule charter and that it is unconstitutional in that it constitutes an infringement upon the power of local self-government of a charter city which the legislature is without authority to do; and, (2) but even assuming said section 16–604, supra, is constitutional, the plaintiff, not having an exclusive franchise to furnish water to residents within that area, the city has the right to enter into competition with the plaintiff in furnishing water to such residents.

The city has presented a number of assignments of error based in substance upon the above proposition of law upon which it relies for relief.

█ Counsel for the parties litigant have furnished the court with excellent briefs on the questions presented and each have been ably assisted by briefs amici curiae but, strange as it may seem, the issues raised here by the city find no support whatever in its pleadings. An examination of the transcript of evidence, however, indicates that such questions were raised in the trial court and considered by it in arriving at its judgment. Counsel both for appellant and appellee have apparently considered that the questions presented here are properly before this court and we will so consider them.

█ We will first consider the question of whether section 16–604, supra, has any application to the facts in this case. The city contends that the plain language of this section clearly indicates that it does not apply in the instant case. The pertinent portions of that section read as follows:

"Where a municipal corporation *and the citizens thereof* are being served under an existing franchise by any public utility, such municipal corporation, before constructing, purchasing, acquiring or leasing, in whole or in part, any plant or property devoted to the business of or services rendered by such public utility, shall first purchase and take over the property and plant of such public utility. * * *" (Emphasis supplied.)

Counsels' reason for their position is that the "municipal corporation" as such has not been furnished water service by plaintiff and that this section only applies where the franchise has been granted by the city and the holder of such franchise has been serving both the municipal corporation and its inhabitants. We believe this to be a fair and a correct interpretation of the language used. Had the legislature intended to say that where only the residents of the city are being served by a public utility the city would be compelled to purchase the property of the utility before extending its service into that area in competition with the public utility it would, in our opinion, have said so in language about which there could be no mistake as to its meaning. We also believe the franchise referred to in section 16–604, supra, had reference to a franchise granted by the

city wherein the public utility was furnishing water service to both the municipality and to the residents thereof. This is true for the reason that no other arm of the state government had the power to grant a franchise to anyone for any purpose within the corporate limits of the city of Tucson.

Were we to accept appellee's interpretation of the language used in section 16-604, supra, and hold that water service only to the residents of municipalities or a portion thereof was sufficient to bring non-charter municipalities within its terms, we would still be confronted with the further question of whether it applies to charter or home rule cities. Appellant argues that it does not. Let us see what the law is relating thereto. Article 2, § 34, of the constitution, supra, although not self-executing, constitutes a specific grant to all municipalities within the state to engage in any kind of business "which the Legislature could in no way modify." City of Tombstone v. Macia, 30 Ariz. 218, 245 P. 677, 682, 46 A.L.R. 828.

The inhabitants of the city of Tucson availed themselves of the provisions of article 13, § 2 of the constitution, supra, and adopted a home rule charter in May 1929 in which it provided in chapter IV, section 7 thereof, for the city to

"* * * acquire by purchase, condemnation or otherwise, and to establish, maintain, equip, own and operate works and appliances within and without the city for supplying the city and its inhabitants * * * with water, gas, etc. * * *"

And in section 27 of said chapter it provided for the city

"* * * To borrow money for any of the purposes for which the city is authorized to provide for, for the carrying out of any of the powers which the city is authorized to enjoy and exercise, and to issue bonds and warrants therefor, subject, however, to the restrictions and limitations in this Charter otherwise provided."

We said in Schultz v. City of Phoenix, 18 Ariz. 35, 156 P. 75, 77, that:

"A city charter enacted by the voters of the municipality is as much a law as if it were enacted by the Legislature. * * *"

and we said in Buntman v. City of Phoenix, 32 Ariz. 18, 255 P. 490, that the provisions of the Phoenix city charter (which are very similar to the provisions of the charter of the city of Tucson above quoted) were equivalent to an act of the legislature granting the powers set forth therein and that such charter provisions had supplied the necessary legislation to carry the constitutional provisions into effect and therefore fully and completely authorized the city to own, maintain and operate an electric railway, to borrow money for that purpose and to issue bonds therefor. The only limitation being, the court said, that in the

procedure for the creation of the debt and issuance of bonds, the general laws of the state of Arizona should govern.

■■■■ It follows that the provisions of the charter of the city of Tucson carried into execution said constitutional grant fully and completely and needed no act of the legislature to further implement it to enable the city to engage in business. It had the constitutional right to engage in the business of furnishng water service to its inhabitants at the time section 16–604, supra, was enacted. Section 16–604, supra, is a law relating to cities. It conflicts with the charter provisions above quoted in its attempt to place restrictions upon the constitutional grant to the city to engage in business and under the provisions of section 16–303, supra, the provisions of the charter prevail and operate as a repeal or suspension of said law to the extent of such conflict. Therefore for the further reason last above stated section 16–604, supra, has no application to charter cities.

Counsel for defendant cite cases from a number of state courts and several cases from the supreme court of the United States to the effect that when a city grants a franchise to a public utility to furnish a public service *that unless the franchise is exclusive* the city may either enter into competition with it or grant a franchise to another person who may do so and that any damage resulting therefrom is damnum absque injuria. Among the authorities cited are, Alabama Power Co. v. City of Guntersville, 235 Ala. 136, 177 So. 332, 114 A.L.R. 181; Skaneateles Water Works Company v. Village of Skaneateles, 184 U.S. 354, 22 S.Ct. 400, 46 L.Ed. 585; Mississippi Power Co. v. City of Aberdeen, 5 Cir., 95 F.2d 990; Knoxville Water Co. v. City of Knoxville, 200 U.S. 22, 26 S.Ct. 224, 50 L.Ed. 353; Helena Water Works Co. v. City of Helena, 195 U.S. 383, 25 S.Ct. 40, 49 L.Ed. 245; Tennessee Electric Power Co. v. Tennessee Valley Authority, 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543; and many others. These cases are to the effect that a grant of a franchise is to be strictly construed and will not operate as a surrender of sovereignty further than is expressly declared. Annotation 114 A.L.R. 192 et seq., 56 Am.Jur., Waterworks, Sec. 14. Counsel for plaintiff concedes in his opening brief this to be the modern trend and in the absence of section 16–604, supra, plaintiff would have no protection. The fact that plaintiff is operating under a certificate of convenience and necessity rather than under a franchise from the city does not better its legal position.

■■■■ We are not concerned here with an exclusive franchise. No one has contended that the certificate of convenience and necessity granted plaintiff by the Corporation Commission amounts to an *exclusive* franchise to furnish domestic water to the residents of Blenman Addition or that it has any control over a municipality engaged in furnishing such service under a constitutional grant and no one could suc-

cessfully sustain such a contention. We therefore hold that the defendant has the lawful right to furnish water to the residents of Blenman Addition in competition with plaintiff and that any damage to plaintiff resulting therefrom is damnum absque injuria. Plaintiff claims that section 16–604, supra (whether constitutional or not) is merely a reaffirmation of a previously declared policy of the state that public utilities shall enjoy a regulated monopoly and upon that basis plaintiff is entitled to protection against competition by the defendant in providing domestic water service to Blenman Addition. We are of the view that the position is untenable. The declared policy of regulated monopolies has never been made to apply to municipal corporations engaged in public utility business and the constitution expressly excepts municipalities from its operation by withholding from the Corporation Commission any power to control municipal corporations who may engage in the business of furnishing a public service to its inhabitants. A declared legislative policy can never rise above a constitutional grant or ignore a constitutional limitation upon its powers. We believe the conclusions above reached make it unnecessary to discuss other questions raised.

In summary we hold (1) that section 16–604, supra, is not applicable to the fact situation in the instant case for the reason that

(a) the plaintiff was not operating as a public utility under a franchise granted by the city; (b) that the city of Tucson as a municipal corporation did not receive any water service from plaintiff; (c) that said section is not operative as against the provisions of a home rule charter in conflict therewith because of the provisions of section 16–303, supra;

(2) that the certificate of convenience and necessity issued to plaintiff by the Corporation Commission does not amount to an exclusive franchise; (3) that the city over whom the Corporation Commission has no control, has the right under a constitutional grant carried into execution by the charter of said city, to engage in furnishing water to residents both within and without the corporate limits of the city and that it may do so without purchasing the property of plaintiff and that any damage suffered by plaintiff as a result thereof is damnum absque injuria. Southwestern Gas & Electric Co. v. City of Texarkana, Tex., 5 Cir., 104 F.2d 847; Alabama Power Co. v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374.

Judgment reversed with directions to dismiss plaintiff's complaint.

STANFORD, C. J., and LA PRADE and UDALL, JJ., concurring.

WINDES, Justice (specially concurring).

I agree with the interpretation placed on section 16–604, A.C.A.1939, by Justice PHELPS, to the effect that its application

is limited to municipalities which are being served under franchises issued by municipalities, but I cannot agree with the holding that the section as thus construed could not apply to home rule cities operating under a charter, if such cities have granted franchises for the operation of public utilities. The implied basis for holding that the statute has no application to the home rule cities is that it conflicts with the charter provisions of the city "in its (presumably the legislature's) attempt to place restriction upon the constitutional grant to the city to engage in business". The majority opinion thus is saying in effect that section 16–604, which, as construed by us, required all municipalities which have granted franchises to public service corporations to pay damages by purchase of the plant of the franchise holder, is unconstitutional for the reason that the legislature has no power to require such payment.

I agree that under the facts in this case the appellant has a right to furnish water to the residents of Blenman Addition in competition with appellee and that any damages resulting therefrom are damnum absque injuria, but this is for the reason that the appellee has no exclusive franchise. It is impossible for me to subscribe, however, to a holding that under a fact situation to which section 16–604 would apply, damages resulting therefrom would be damnum absque injuria. In the event an exclusive franchise were granted by a home rule municipality, both the federal and state constitution would compel just compensation for a breach thereof, and certainly the legislature has power to require such as has been done under section 16–604.

It may well be said that we are not dealing with a fact situation that fits the provision of 16–604. With this I agree. However, when we attempt to announce principles of law concerning the constitutionality or applicability of a statute that have an impact upon a fact situation contemplated by the statute, we must deal with the facts so contemplated and to which the statute is applicable, and I cannot agree that the statute when applied to such a fact situation is unconstitutional or that a charter provision under such circumstances would prevail over the legislative act.