CITIZENS UTILITIES COMPANY OF ILLINOIS, Plaintiff-Appellee, *v.* THE METROPOLITAN SANITARY DISTRICT OF GREATER CHICAGO, Defendant-Appellant.

(No. 57027; 

First District (2nd Division)—December 17, 1974.

DOWNING, J., specially concurring.

Allen S. Lavin and Foran, Wiss and Schultz, both of Chicago (Robert E. Wiss and James J. Casey, of counsel), for appellant.

Sheldon Karon, Joseph A. Spitalli, and Robert M. Kluchin, all of Chicago (Friedman & Koven, of counsel), for appellee.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

This appeal arises from a suit by Citizens Utilities Company of Illinois, a privately owned public utility, against the Metropolitan Sanitary District of Greater Chicago to recover, under the constitution, for damage to a sewage treatment plant.[1] The material facts are not in dispute.

On December 18, 1962, the Sanitary District, acting within its statutory powers and lawfully exercising its authority, completed construction of an interceptor sewer near the Village of Hoffman Estates in Cook County, Illinois. This completion was anticipated by all concerned because District had jurisdiction of the area in which the village was situated. It notified all officials immediately involved and directed that sewer lines from Hoffman Estates be connected with the interceptor. Ten days later the connection was made, and from then on, all sewage from the village was diverted into the District's sewage disposal system.

Until that time, in fact from 1955, sewage utility service had been furnished to the village by a treatment plant that was constructed, and on two occasions improved, at a total cost of $486,756. The plant was operated under certificates of convenience and necessity issued by the Illinois Commerce Commission. In its 1960 certificate, the Commission required that the plant obtain from the Sanitary District such permits as may be required by law. Accordingly, on January 1, 1961, the District reviewed plans and specifications and then issued the permit under which the plant was operating when the interceptor sewer was completed. In elaborating on the terms of its permission, District told the owners that

---

[1] In the balance of this opinion, Citizens Utilities Company, plaintiff below, appellee in this court, will be referred to as Citizens. Metropolitan Sanitary District of Greater Chicago, defendant below, appellant in this court, will be referred to as the Sanitary District or District, as the context may require.

the plant was to operate as a temporary sewage treatment facility and stated that the permit was to remain in force only until Sanitary District facilities were available.

When these did become available and village sewer lines were connected with District's interceptor sewer, the plant, having no sewage from the village to treat, ceased operations entirely, totally depreciated in value and became useless. Indeed, the cost of salvaging the plant exceeded its value by $17,000. Because of this fact, although no part of their property was taken or physically touched by the District, owners of the plant demanded that District compensate them for their loss. District, however, refused, saying that it was under no moral or legal obligation to pay the owners any compensation.

Following this refusal, Citizens, a company which acquired ownership rights to the plant after the interceptor sewer was completed, filed suit alleging that it was entitled to recover from District the sum of $520,000 as just compensation for property that allegedly became useless as a result of District's construction of the interceptor sewer and connection of sewer lines from the Village of Hoffman Estates. For its theory of the case, Citizens relied on article II, section 13, of the Illinois constitution of 1870,[2] on section 19 of "An Act to create sanitary district * * *"[3] and on the fifth and fourteenth amendments to the Federal constitution.[4] District appeared, answered the complaint, denied the material allegations and interposed affirmative defenses. In later pretrial proceedings, the trial court entered an order which found that there was no factual dispute concerning the issue of District's liability, if any; the dispute between the parties involved a question of law. Therefore, it was agreed

---

[2] The substance of article II, section 13 of the Illinois constitution of 1870 is now in a revised condensed paragraph which provides that "[p]rivate property shall not be taken or damaged for public use without just compensation as provided by law. Such compensation shall be determined by a jury as provided by law." Ill. Const. (1970), art. 1, § 15.

[3] "Every sanitary district shall be liable for all damages to real estate within or without such district which shall be  *  *  *  damaged by reason of the construction, enlargement or use of any  *  *  *  improvement under the provisions of this act  *  *  *." Ill. Rev. Stat. 1961, ch. 42, par. 339.

[4] The 5th amendment to the United States Constitution is a limitation only on the powers of the Federal government. (*Corrigan v. Buckley* (1926), 271 U.S. 323, 330, 70 L.Ed. 969, 46 S.Ct. 521; 16 C.J.S. *Constitutional Law* § 69 (1956).) Moreover, the guarantee in our State constitution that "private property shall not be taken or damaged for public use without just compensation" is greater than that secured by the 5th amendment. (See *Donaldson v. City of Bismarck* (1942), 71 N.D. 592, 3 N.W.2d 808, 816.) Therefore, in resolving the dispositive issue in this appeal, we will discuss only on the State constitutional and statutory provisions involved.

that Citizens and District would file cross-motions for summary judgment. This was done, and thereafter, memoranda of law arguing the respective positions of the litigants were submitted. The court took the motions under consideration and then denied the one filed by District and granted the one filed by Citizens. After this ruling, the question of damages was heard by a jury that returned a verdict of $385,000 in favor of Citizens. Judgment was entered on the verdict. District now brings the case to this court for our review. The dispositive issue presented is whether the trial court erred in granting Citizens' motion for summary judgment, thus holding that with regard to the loss of the sewage treatment plant, it suffered damages compensable under article II, section 13 of the Illinois Constitution of 1870 or under section 19 of "An Act to create sanitary districts * * *" (Ill. Rev. Stat., 1961, ch. 42, par. 339).

■■ It is clear from the record before us that no property belonging to owners of the plant or to others adjacent to it was taken by the Sanitary District. Taking of private property within the meaning of the constitution can be accomplished only by the filing of a petition, the ascertainment of value and the payment of just compensation. (*People ex rel. Gutknecht v. City of Chicago*, 414 Ill. 600, 111 N.E.2d 626; 17 I.L.P. *Eminent Domain* § 42 (1956).) And, it is also clear that there was no physical intrusion on or obstruction of Citizens' property by District. What happened was District's construction of a public improvement, an interceptor sewer, that was later connected to sewer lines from the Village of Hoffman Estates, thereby diverting sewage from Citizens' treatment plant, followed by the plant becoming useless because it no longer could serve the village.

The question, then, is whether this was damage of private property for public use within the meaning of the constitutional guarantee or damage by reason of the construction of an improvement within the meaning of section 19 of the sanitary district act. The answer to this question necessarily depends on the meaning our courts have given to the concept of damage as it appears in the applicable provision of the 1870 constitution and in the pertinent section of the drainage code.

In *Rigney v. City of Chicago*, 102 Ill. 64, a property owner invoked article II, section 13, of the Illinois constitution of 1870 and sued the city of Chicago for damages he allegedly sustained as a result of the city's construction of a viaduct some distance from his property. As in the case before us, there was no taking, nor was there any physical intrusion upon the land. However, the owner proved that the viaduct cut his land from all communication with one of the city's main thoroughfares, one to and from which he had had prior access. The owner's evidence established that as a result of this obstruction, monthly rentals of his property were

reduced and its value deteriorated by two-thirds. Despite this showing, the owner was denied recovery in the trial court; the appellate court affirmed. He appealed to the supreme court and the issue he presented required construction of the words "or damaged" in the provision of the Illinois constitution of 1870 which guaranteed that "[p]rivate property shall not be taken *or damaged* for public use without just compensation." (Emphasis supplied.) Ill. Const. 1870, art. 11, § 13.

After reviewing history and decisional law of this and other jurisdictions, the court concluded that damage under the 1870 constitution did not require, in every case, proof of actual appropriation or physical injury to an owner's property. Therefore, the court reversed the denials of relief to the owner. In doing so, it concluded that "damaged" meant any direct physical disturbance of a right, either public or private, which an owner enjoys in connection with his property; a right which gives the property an additional value; a right which is disturbed in a way that inflicts a special damage with respect to the property in excess of that sustained by the public generally. The court added, "[I]t was the intention of the framers of the present constitution to require compensation to be made in all cases where, but for some legislative enactment, an action would lie by the common law." 102 Ill. 64 at 81.

This definition has stood unchanged and unmodified since *Rigney* was decided. It has been approved by the highest court of this country. (See *City of Chicago v. Taylor* (1888), 125 U.S. 161, 31 L.Ed. 638, 8 S.Ct. 820; *D.M. Osborne & Co. v. Missouri Pacific Ry. Co.* (1893), 147 U.S. 248, 37 L.Ed. 155, 13 S.Ct. 299.) It has influenced development of American law. (See *City & County of Honolulu v. Market Place, Ltd.* (Hawaii 1973), 517 P.2d 7, 13; Van Alstyne, Statutory Modification of Inverse Condemnation: The Scope of Legislative Power, 19 Stan. L. Rev. 727, 771-72 (1967); Nichols on Eminent Domain § 6.441 [3] (rev. 3d ed.); 26 Am. Jur. 2d *Eminent Domain* § 159 (1966).) And, with regard to section 19 of "An Act to create sanitary districts * * *" (Ill. Rev. Stat. 1961, ch. 42, par. 339), there is no reason to believe the legislature intended the word "damaged" to have any other meaning. The principal legislative purpose in the enactment of this statute, which occurred after the *Rigney* decision, was to creat a venue and afford litigants the right to bring their action in counties where the damaged real estate is situated as well as in the county where the sanitary district is located. *Kosicki v. S. A. Healy Co.,* 380 Ill. 298, 44 N.E.2d 27.

Therefore, damage within both the constitutional and statutory provisions means some direct physical disturbance of a right which owners of the plant in question enjoyed in connection with their property, one that gave the plant additional value, and which, when disturbed, would cause

special damage in excess of that sustained by the public generally and give rise to an action by the common law. (See *Otis Elevator Co. v. City of Chicago*, 263 Ill. 419, 424, 105 N.E. 338.) Damage, as thus defined, had to be actionable, but for District's statutory authority. (Compare *Illinois Power & Light Corp. v. Talbott*, 321 Ill. 538, 152 N.E. 486; see 2A Nichols on Eminent Domain § 6.41[1] (rev. 3d ed.).) This meaning of damage, of course, has application to the rights to or in property which the owners enjoyed in connection with their treatment plant.

■■ "Property," within the meaning of our constitution, is a word of general import which applies to every specie of right and interest capable of being enjoyed as such and on which it is practicable to base a money value. (See *Father Basil's Lodge, Inc. v. City of Chicago*, 393 Ill. 246, 65 N.E.2d 805; *City of Belleville v. St. Clair County Turnpike Co.*, 234 Ill. 428, 84 N.E. 1049; 11 I.L.P. *Constitutional Law* § 461 (1955).) "The term comprehends not only the thing possessed, but also, in strict legal parlance, means the rights of the owner in relation to land or a thing; the right of a person to possess, use, enjoy, and dispose of it, and the corresponding right to exclude others from the use." (26 Am. Jur. 2d *Eminent Domain* § 173 (1966); see *Drainage Commissioners v. Knox*, 237 Ill. 148, 86 N.E. 636; *Transcontinental Oil Co. v. Emmerson*, 298 Ill. 394, 131 N.E. 645.) It is in recognition of these rights that our constitution prohibits private property from being damaged for public use without just compensation and thus secured to the owners of the sewage treatment plant the right to undisturbed use and enjoyment of their property. See *Kane v. City of Chicago*, 392 Ill. 172, 176, 64 N.E.2d 506.

Now, what property right of the treatment plant owners was damaged that is, subjected to a direct physical disturbance by District in a way that gave rise to a cause of action by the common law? Careful examination of the admitted facts discloses without question, that the owner's right to the treatment plant itself, that is, to the *res*, was not disturbed by the Sanitary District in connection with completion of the interceptor sewer. (See *Rigney v. City of Chicago*, 102 Ill. 64, 77, 77 C.J.S. *Res*, at 273 (1952); compare *Horn v. City of Chicago*, 403 Ill. 549, 554-55, 87 N.E.2d 642.) Nor did the District, in any way, disturb the right of the treatment plant owners to possess, use, enjoy, dispose or exclude others from using their property. Therefore, it appears that no right which owners of the treatment plant enjoyed with regard to their property was disturbed by the District. The only occurrence, the one that gave rise to this controversy, was District's exercise of its lawful jurisdiction, its directions, as it had the statutory right to give, that sewer lines of the Village of Hoffman Estates be connected with the completed interceptor sewer, and loss to the treatment plant of the village to which it would have

continued furnishing sewage treatment service. Therefore, the question we reach is whether the consequential interruption of the plant's sewage treatment service to the village damaged the right of the plant owners to undisturbed use and enjoyment of their property. In our judgment, it did not. We are convinced that such a theory of compensable constitutional damage cannot be fashioned by refining the concept that underlies the right to undisturbed use and enjoyment of property.

The plant in question was a privately owned public utility that was operating under a certificate of convenience and necessity issued by the Illinois Commerce Commission. In this state, "[n]o certificate of public convenience and necessity shall be construed as granting a monopoly or an exclusive privilege, immunity or franchise." (Ill. Rev. Stat. 1961, ch. 111⅔, par. 56.) Moreover, the certificate under which the plant was operating when District's interceptor sewer was completed required its owners to "* * * secure such permit or permits from the Metropolitan Sanitary District of Greater Chicago as may be required by law * * *." In compliance with this requirement, owners of the plant submitted plans and specifications and applied for a permit. The permit which District issued allowed the plant to operate as a temporary sewage treatment facility with a provision which told the owners that "[a]ll Permits for temporary sewage treatment facilities will be * * * in force only until it is determined by the Chief Engineer of The Metropolitan Sanitary District that Metropolitan Sanitary District sewerage facilities are available. When the Chief Engineer shall so determine, the Permittee agrees to abandon operations of the temporary sewage treatment plant and make a direct or indirect connection to a Metropolitan Sanitary District sewerage facility." Therefore, not only was the plant existing under a nonexclusive franchise, it was operating under a temporary permit which by its terms was revocable whenever the chief engineer of the District determined that District's own sewage facilities were available.

■■ Termination of a franchise or permit which by its terms is revocable does not deprive the owner of property that is constitutionally compensable. (See *Boston Elevated Ry. Co. v. Commonwealth* (1942), 310 Mass. 528, 39 N.E.2d 87; *United Electric Light Co. v. Deliso Construction Co.* (1943), 315 Mass. 313, 52 N.E.2d 553; compare *Acton v. United States* (9th Cir. 1968), 401 F.2d 896; *Greater Wilmington Transportation Authority v. Kline* (Del. 1971), 285 A.2d 819; *Hendricks County Rural Electric Membership Corp. v. Public Service Co.* (Ind. App. 1971), 276 N.E.2d 852.) For example, a municipality like the Village of Hoffman Estates that constructs and operates a utility in competition with an existing one has no constitutional obligation to pay for depreciation in the value of the property affected. (Compare *Greater Tangipahoa Utility Co. v. City*

*of Hammond* (La. App. 1971), 255 So. 2d 510, *writ denied* (1972), 260 La. 290, 255 So. 2d 773; *City of Tucson v. Polar Water Co.* (1953), 76 Ariz. 126, 259 P.2d 561.) Even in a taking by eminent domain, where value must be determined for the purpose of compensation, loss of business profits and consequential deterioration in property value are not elements of damage. (See *Chicago & Evanston R.R. Co. v. Dresel*, 110 Ill. 89; compare *Department of Public Works & Buildings v. Diel*, 89 Ill. App.2d 130, 232 N.E.2d 133.) In fact, in this case, absent proof of some direct physical disturbance of a right they enjoyed in connection with their property, there was no one whom the plant owners could sue at common law to recover for the loss which was a consequence of the connection of the sewer lines from the Village of Hoffman Estates with the completed interceptor sewer. For these reasons, we conclude that no right of the owners to or in their sewage treatment plant was damaged by the Sanitary District; and as a consequence, District was not liable to Citizens. Therefore, the trial court erred in granting Citizens' motion for summary judgment and holding that with regard to the loss of the sewage treatment plant, Citizens suffered damages compensable under article II, section 13 of the Illinois Constitution of 1870 or under section 19 of "An Act to create sanitary districts * * *." Accordingly, we reverse the grant of summary judgment, and without reaching any of the issues concerning proof of damages, we reversed Citizens' $385,000 judgment based on the jury's verdict. We order judgment entered in this court in favor of the Sanitary District.[5]

Reversed, with judgment here for the Sanitary District.

HAYES, P. J., concurs.

Mr. JUSTICE DOWNING, specially concurring:

I concur with both the result and the reasoning set forth in the majority opinion. Based on the record before the court, I believe there are additional facts which support the decision of this court.

Since 1955 the sanitary sewerage system, which included the sewage treatment plant and collector lines, was owned and operated by Suburban Utilities Co. (hereinafter Suburban). In 1956 Citizens purchased, and since that date, owned the stock of Suburban.

On May 11, 1962, the Village filed in the Circuit Court of Cook County

---

[5] Supreme Court Rule 366 provides that "[i]n all appeals the reviewing court may, in its discretion, and on such terms as it deems just:

          *     *     *

(5) give any judgment and make any order that ought to have been given or made * * *." Ill. Rev. Stat. 1973, ch. 110A, par. 366 (a)(5).

an eminent domain action to acquire the entire sewerage system, including the real estate involved in the instant litigation. This action named, among others, Citizens and Suburban as defendants.[1] Prior to commencing the eminent domain litigation, the Village was authorized on April 25, 1962 by the Illinois Commerce Commission to institute the action against a certificated public utility. (See Ill. Rev. Stat. 1961, ch. 47, par. 1 *et seq.*) Citizens filed a traverse to, and a motion to dismiss said eminent domain petition challenging, for various reasons, the legal sufficiency of said petition. On December 4, 1962 the circuit court denied the motion to dismiss and traverse.

On December 18, 1962, Metropolitan served notice upon the Village and Suburban of the availability of its interceptor sewerage system. Thereafter, on December 27, 1962, the local collector sewer lines within the Village were connected to the Metropolitan interceptor and service at the treatment plant terminated. The record further discloses that on December 29, 1962, the treatment plant site was the subject of a quit-claim deed from Suburban to F & S Construction Co.—the original subdivider and developer; the deed was recorded on June 11, 1964.

On October 18, 1963, an agreement was reached between the Village and Citizens, with respect to the said eminent domain action for the sale of the sewerage system *excluding the subject treatment plant site*; the consideration was $1,642,176.00.[2] The purchase was to be consummated January 7, 1964.

On January 17, 1964, Citizens and the Village stipulated to an order dismissing the eminent domain action. The stipulation, among other things, said "* * * and all matters in controversy having been satisfactorily settled by and between the parties."

In Illinois, it has long been held that in eminent domain actions, title to real estate relates back to the time of the filing of the petition to condemn and rights existing against the land at that date are transferred as a part of the award. (See *Chicago v. McCausland* (1942), 379 Ill. 602, 604-05, 41 N.E.2d 745; 17 I.L.P. *Eminent Domain* § 163 (1956).) As stated in the aforesaid case, "It is also said that in law the land is regarded as being taken at the time the petition for eminent domain is filed. [Citations.]" See also *Board of Junior College District 504 v. Carey* (1969), 43 Ill.2d 82, 250 N.E.2d 644.

---

[1] Also named as defendants were Citizens Utilities Co., a Delaware corporation (who was dismissed), and "Unknown Owners." The petition sought to acquire both the sewerage and water systems owned by Citizens and operated in the Village.

[2] At the same time, the Village also purchased and acquired Citizens' water system located in the Village.

When Metropolitan served (on December 18, 1962) its notice on the Village and Suburban to connect to its interceptor, the record of the eminent domain action indicated the Village had an eminent domain action on file which had withstood a traverse and motion to dismiss. Therefore, the Village had a primary interest in the connection of the interceptor and the effect on the sewage treatment plant. It is recognized that the Village, as a condemnor, could have abandoned its eminent domain action subject to the sanctions of section 10 of the Eminent Domain Act. Ill. Rev. Stat. 1961, ch. 47, par. 10.

Of course, we do not know the reasons for the agreement between the Village and Citizens in the said eminent domain proceedings, and the exclusion of the treatment plant from the agreement. However, the simple fact is that the record clearly demonstrates that Citizens had a proper forum (in the eminent domain case) in which to resolve the question of damage, if any, to the treatment plant and its site as the result of the connection of the sewers to Metropolitan's interceptor and the amount of "just compensation" as provided in our Illinois Constitution.[3]

Whatever the tactical reasons may have been which caused Citizens at that time to abandon its right in the eminent domain case for "just compensation" for the taking by the Village of the treatment plant and site, I have been unable to find anything in this record which would legally justify transferring to Metropolitan the duty to pay Citizens such "just compensation."

---

[3] Metropolitan did not press this point on appeal.